A. R. FARMER v. TOWN OF WILSON.

(Filed 15 June, 1932.)

1. **Arbitration and Award E b—Award estops the parties as to all matters embraced in submission and determined by arbitrators.**

　　In determining whether an arbitration and award estops the parties the award will be interpreted in the light of the submission, and the award will estop the parties as to all matters embraced in the submission which were determined by the arbitrators within the authorization therein contained.

**2. Same—Award in this case determined all damages, past, present and future, sustained by ponding of water by defendant.**

Where a city has raised the height of a dam for hydro-electric purposes and the question of damages sustained by reason of the resulting ponding of water is submitted to arbitration under an agreement that the arbitrators should assess such past, present and future damages as they might find were caused any of the landowners who were parties to the agreement, and the award made thereunder recites that "the raising of the dam has caused damage to certain properties" and that "we do award the parties listed below damages as follows": *Held*, the award includes all damages, past, present and future, and the contention of an owner that it failed to award future damages cannot be sustained, and the award is binding on him in the absence of fraud, mistake, duress, or other impeaching circumstances.

CIVIL ACTION, before *Barnhill, J.*, at November Term, 1931, of WILSON.

The pleadings and exhibits disclose substantially the following state of facts:

Prior to 1922 the town of Wilson purchased a mill site on Contentnea Creek about three miles from Wilson, and for the purpose of developing power with which to furnish light and other services to the town, erected a concrete dam across the creek and constructed a power plant. After the dam was erected the plaintiff and a number of other landowners owning property near the mill site and dam set up the contention that the construction of said dam had resulted in ponding more water upon their lands. The controversy grew, and finally the landowners, including the plaintiff, entered into a written agreement designated as "Exhibit A," reciting that the town had caused a dam to be erected across the creek at a point where an old dam had theretofore existed, and further, that as a result thereof "more water was ponded upon their land than the said town by reason of its ownership of said mill site had the prescriptive right to pond," and that the said parties desired that all matters in controversy between them in reference to the erection of said dam and ponding of said water be settled and adjusted as rapidly and as quickly as possible. It was agreed that three arbitrators named in the paper-writing "be, and they are hereby appointed a board or a jury who shall, after being duly qualified, visit said premises, make an inspection thereof, and hear such evidence as may be offered before them, cause such survey or surveys to be made as they shall determine, and ascertain if the said town in the erection and construction of said dam has so erected and constructed the same that more of the lands of said parties of the second part are flooded than were previously flooded, and, if so, what damage, if any, past, present and future, the said parties of the second part have or will severally

sustain, and they will make their report in writing, the decision of any two of said three to be as valid as if made by all three." It was further agreed in said Exhibit A: "And the parties hereto do severally covenant and agree between themselves and with each other that they will be bound by the determination of the above named three persons . . . without right of appeal to any court or courts, and for the faithful observance of this their obligation, all of said parties do hereby bind themselves, their successors, heirs and representatives."

In pursuance of the foregoing agreement the arbitrators made a report on 15 December, 1922. The pertinent part of this report is as follows: "The committee appointed now reports that they have examined the facts, heard certain evidence, viewed the lands and made certain surveys. We find as a matter of fact that the new dam built by the town of Wilson is higher than the old dam; that the raising of said dam has caused damage to certain property, and we do now award to the parties listed below damages as follows," etc. Various sums were listed in said report as damages to various property owners, ranging from $2,400 to nothing. The plaintiff and two other property owners were awarded "nothing."

On 17 April, 1930, plaintiff instituted an action for damages against the town of Wilson, alleging that on a certain day in 1928, and on certain days in 1929, his lands "were inundated and flooded by reason of raising of the dam by the defendant across Contentnea Creek . . . causing the plaintiff to lose all his crops on several occasions, depreciating and souring his land and causing water to back up on said land and stagnate there, making the land unhealthy to live upon." Plaintiff further alleged that the award of the arbitrators on 15 December, 1922, "was not pursuant to the terms of the agreement previously entered into, . . . but made a finding as to past damages alone, without any reference whatsoever to the present or future injuries which plaintiff among others, might sustain." The town of Wilson filed an answer setting up the submission agreement and the award as a bar to the right of plaintiff to recover.

At the hearing the trial judge was of the opinion that the plaintiff "was bound by the terms of said agreement and award, and was estopped from further prosecution of the action." Whereupon, it was adjudged that the plaintiff take nothing, from which judgment plaintiff appealed.

*John D. Bellamy & Sons for plaintiff.*
*Connor & Hill for defendant.*
*S. E. Lucas of counsel.*

IN THE SUPREME COURT. [202

BROGDEN, J. What are the legal tests for determining whether an arbitration and award estops the parties thereto?

All courts agree that the submission to an award is the foundation upon which the interpretation and validity of the arbitration and award is built. This prevailing idea was expressed by this Court in *Geiger v. Caldwell,* 184 N. C., 387, 114 S. E., 497, in these words: "Turning to the authorities, we find it settled that the submission furnishes the source and prescribes the limits of the arbitrators' authority, without regard to the form of the submission. The award, both in substance and in form, must conform to the submission, and the arbitrators are inflexibly limited to a decision of the particular matters referred to them. . . . A submission is in itself a contract, or agreement, or so far partakes of its nature as to be substantially within the principle applicable to contracts as 'the basis of the arbitration and award is the submission.'" *Millsaps v. Estes,* 137 N. C., 536, 50 S. E., 227; *Williams v. Mfg. Co.,* 153 N. C., 7, 68 S. E., 902; *Coe v. Loan Co.,* 197 N. C., 689, 150 S. E., 334; *Transportation Co. v. Stearns,* 195 N. C., 720, 143 S. E., 473. The submission agreement authorizes the arbitrators after hearing the evidence, making surveys and inspecting the premises, to award damages, if any, past, present and future. The plaintiff does not contend that the arbitrators exceeded their authority, but he constructs his case upon the following words in the report of the arbitrators: "that the raising of said dam has caused damage to certain properties." The words: "has caused damage" are interpreted by the plaintiff as a declaration that only past damages were considered or awarded, and therefore the right to future damages was preserved. It must be observed, however, that the words following the language relied upon by the plaintiff are as follows: "And we do award to the parties listed below damages as follows."

The award must be interpreted in the light of the submission, and when so interpreted there is nothing to indicate that the element of future or prospective damages was omitted or excluded.

Manifestly, the record discloses a valid submission, which in definite terms, authorized the arbitrators to hear, consider and award. The award does not exceed the power granted, or clearly exclude any material item in controversy. Nor is there any suggestion of fraud, mistake, duress, or other impeaching circumstance. Consequently the judgment is

Affirmed.