T. W. POE & SONS, INC. v. THE UNIVERSITY OF NORTH CAROLINA.

(Filed 30 June, 1958.)

**1. Arbitration and Award § 1—**

The requirement of an arbitration agreement that the arbitrator should render his decision not later than thirty days from the date of closing the hearings does not require the delivery of the award to the parties within the time specified, it being sufficient if the arbitrator signs his award and it is received by the arbitration tribunal within the time limited.

**2. Same—**

Ordinarily, any person who has a dispute with another person may submit the dispute to arbitration without the joinder of all the parties who have a joint interest in the matter.

**3. Arbitration and Award § 4—**

Arbitrators are not bound to decide according to law when acting within the scope of their authority, and may make an award according to their notion of justice without assigning any reason, and therefore in the arbitration of a construction contract upon controversy based on alleged defect in the materials or faulty workmanship resulting in the leakage of a number of showers, the actual number of showers involved

and when the defects were reported by the owner to the contractor are addressed solely to the arbitrator.

**4. Arbitration and Award § 7—**
Where controversy between the owner and the contractor as to the contractor's liability for leakage in showers in the building, allegedly due to defect in materials or faulty workmanship, is submitted to arbitration, the award of the arbitrator within the scope of the inquiry is conclusive on the parties, notwithstanding any errors on the part of the arbitrator in regard to the law or facts, and, the subcontractors not being parties, it will be assumed that the liability of the contractor alone was within the scope of the agreement, and the arbitrator properly omits any decision as to the liability of subcontractors.

APPEAL by plaintiff from *Hall, J.,* at October 1957 Regular Term, of DURHAM.

Civil action to vacate and set aside arbitration award.

It is admitted in the pleadings in this action (1) that the parties hereto entered into a contract for the construction of a men's dormitory on the campus of the University of North Carolina on the 5th day of June, 1950, and that the building was accepted by the defendant on or about the 17th day of May, 1952, subject to the guarantee set out in full in the agreement to arbitrate, hereinafter set forth; (2) that thereafter a controversy arose between the parties concerning certain alleged defects in the construction of said building; and (3) that thereafter on 8th day of February, 1957, the parties entered into a written contract whereby the controversy was submitted to arbitration, in manner and form following:

"AMERICAN ARBITRATION ASSOCIATION ADMINISTRATOR

. Commercial Arbitration Tribunal

"IN THE MATTER OF THE ARBITRATION BETWEEN—
THE UNIVERSITY OF NORTH CAROLINA, Owner, and

            SUBMISSION

T. W. Poe & Sons, Contractor
Men's Dormitory (Cobb Dormitory)
Code 1620, Item 8
Aetna Casualty & Surety  S-29161

"We, the undersigned parties," plaintiff and defendant, "hereby agree to submit to arbitration under the Commercial Arbitration Rules of the American Arbitration Association the following Controversy:

"To determine the responsibility for defective baths constructed under contract by T. W. Poe & Sons, Inc., of Durham, North Carolina, hereinafter referred to as contractor, for and on behalf of University

of North Carolina, Chapel Hill, North Carolina, hereinafter referred to as owner, and which party shall absorb the expense of rebuilding the same. Separate contracts were let by owner for plumbing, wiring, and heating. After the building had been completed, leakage appeared in a number of showers, and this controversy involves the question as to which of the contractors, if any, was responsible for said leakage. Owner has caused repairs to be made at total cost to it of $11,139.40. Owner contends that contractor failed to deliver building to second party in first-class operating condition in accordance with plans and specifications referred to in above contract, and contractor having thereby guaranteed materials and workmanship for a period of twenty-seven months after acceptance of the building and defects in some of said showers having been discovered prior to the expiration of said period, owner relies upon Addendum No. One, Article 58. of said contract, said Article reading as follows:

" 'GUARANTEE. The Contractor shall deliver the building to the owner complete and in first-class operating condition in every respect, in accordance with the plans and specifications. He shall guarantee the materials and workmanship for a period of twenty-seven months after the acceptance of the building. If, during the period covered by the guarantee, any defects should show up due to defective materials or faulty workmanship or negligence or want of proper care on the part of the contractor, his subcontractors or employees, the contractor shall furnish such new materials as are necessary and repair any defects as required, at his own expense, upon notice from the Owner or the Architect of the existence or discovery of such defects or evidence of faulty workmanship.'

"We further agree that the above controversy be submitted to Arbitrator(s) selected from the Panels of Arbitrators of the American Arbitration Association.

"We further agree that we will faithfully observe this Agreement and the Rules and that we will abide by and perform any Award rendered pursuant to this Agreement, and that a judgment of the Court having jurisdiction may be entered upon the Award."

(Signatures Omitted)

*"DIRECTIONS:*

"1. This Submission, when signed by the parties, must be filed with the American Arbitration Association, and the administration fee paid, as provided in the Rules, in order to institute proceedings under the Rules.

"2. This Submission is generally applicable, but as the legal requirements for a valid submission vary under different arbitration laws

it is necessary for the parties to ascertain the provisions of the applicable law before using this Submission Form."

That thereafter the Arbitrator conducted a hearing on 19th day of March, 1957, and thereafter made an award as follows:

"AMERICAN ARBITRATION ASSOCIATION ADMINISTRATOR
COMMERCIAL ARBITRATION TRIBUNAL
RECEIVED
April 18, 1957
Charlotte, N. C. Tribunal

"In the Matter of the Arbitration
between—
University of North
Carolina, Chapel Hill,          *AWARD OF ARBITRATOR*
N. C. and
T. W. Poe & Sons,
Durham, N. C.

"(I) The undersigned Arbitrator, having been designated in accordance with the Arbitration Agreement entered into by the above named Parties, and dated February 8, 1957, and having been duly sworn and having duly heard the proofs and allegations of the Parties, Award, as follows:

"1. I find that the University of North Carolina shall not be held liable for the expense and cost and repairing defective work in twelve (12) bathrooms in Cobb Dormitory at University of North Carolina, Chapel Hill, North Carolina.

"2. I further find that the General Contractor, T. W. Poe & Sons of Durham, North Carolina, who built Cobb Dormitory shall reimburse the University of North Carolina in the amount of $11,139.40 as detailed in letter dated June 24, 1956, to F. B. Turner, Engineer, Budget Bureau, Raleigh, North Carolina, by J. S. Bennett, Director of Operations, University of North Carolina.

"3. Each party shall pay one-half of the Administrative fee and expenses.

(s) LOUIS H. ASBURY, Jr.

"Dated: April 17, 1957."

The cause came on for hearing in Superior Court.

A jury trial was waived, and it was agreed between counsel for plaintiff and defendant to submit the matters in controversy to the presiding judge to hear the evidence, find the facts, make conclusions of law thereon and enter judgment in accordance therewith.

Thereafter, on 18 October, 1957, the matter was called for trial before Hall, Judge presiding, who, after evidence had been presented,

and argument of counsel, made findings of fact and conclusions of law, and entered judgment, all as follows:

"(1) That this is a civil action instituted by the plaintiff against the defendant for the purpose of setting aside and vacating an Award of an arbitrator rendered in favor of the defendant and against the plaintiff growing out of a controversy between the parties concerning certain alleged defects in the construction of a men's dormitory on the campus of the University of North Carolina at Chapel Hill;

"(2) That on the 8th day of February, 1957, the plaintiff and the defendant entered into a written contract whereby they agreed to submit said controversy to arbitration under the commercial arbitration rules of the American Arbitration Association; that said Agreement contains the following provision:

" 'We further agree that we will faithfully observe this Agreement and the Rules and that we will abide by and perform any Award rendered pursuant to this Agreement and that a judgment of jurisdiction of the court having jurisdiction may be entered upon the Award.'

"(3) That pursuant to notice in substantial compliance with the commercial arbitration rules of the American Arbitration Association, a hearing was held on March 19, 1957, in Chapel Hill, North Carolina, before Louis H. Asbury, Jr., one of the panel of arbitrators of said American Arbitration Association, at which hearing the plaintiff was represented by Mr. E. O. Poe and Mr. A. M. Sprague, and the defendant was represented by Mr. J. S. Bennett, Mr. M. J. Hakan, Mr. Giles Horney, and Mr. Frank B. Turner.

"(4) Based upon the evidence adduced at said hearing, the arbitrator rendered an Award in favor of the defendant and against the plaintiff in the amount of $11,139.40, which said Award is dated April 17, 1957, and was received in the Charlotte Office of the American Arbitration Association on April 18, 1957, and transmitted by mail to each of the parties hereto on the 24th day of April 1957, a copy of which was actually received by the plaintiff on the 26th day of April 1957.

"(5) That in said Agreement to submit the controversy to arbitration the question submitted to the arbitrator was to determine the responsibility as between the plaintiff and the defendant for defective baths constructed by the plaintiff for the defendant in the men's dormitory at Chapel Hill, hereinbefore referred to. That in said Agreement attention was called to Article 58 of said contract, which stipulated that the 'contractor shall guarantee the building to the owner complete and in first class operating condition in every respect, in accordance with the plans and specifications. He shall guarantee the

materials and workmanship for a period of 27 months after the acceptance of the building. If, during the period covered by the guarantee, any defects should show up due to defective materials for faulty workmanship or negligence or want of proper care on the part of the contractor, sub-contractors or employees, the contractor shall furnish such new materials as are necessary and repair any defects, as required, at his own expense upon notice from the owner or the architect of the existence or discovery of such defects or evidence of faulty workmanship.'

"(6) That said building was accepted by the defendant on the 17th day of May 1952, subject to the guarantee set out in full in the next preceding paragraph thereof. That plaintiff was advised orally and in writing long before the expiration of the 27 months guarantee period that certain of the baths in said dormitory were leaking, due to defective materials or faulty workmanship.

"(7) That the Award was rendered by the arbitrator within the time specified by the commercial arbitration rules of the American Arbitration Association; the award is within the terms of the question submitted to him for arbitration; the arbitrator did not exceed his authority in rendering the Award set out in the record, and the same is supported by sufficient evidence.

"From the foregoing findings of fact, the court concludes as a matter of law that the Award of the arbitrator should be in all respects approved and confirmed.

"It is, therefore, upon motion of George B. Patton, Attorney General of North Carolina and counsel for the defendant, Considered, Ordered, Adjudged and Decreed that the Award of Louis H. Asbury, Jr., arbitrator, dated April 17, 1957, to the effect that the plaintiff should pay to the defendant the sum of $11,139.40 be and the same is hereby in all respects approved and confirmed.

"It is further Ordered, Adjudged and Decreed that the defendant have and recover of the plaintiff the sum of $11,139.40, together with the costs of this action, to be taxed by the Clerk."

The plaintiff objects and excepts to the signing of the judgment, and to the findings of fact Nos. 1 through 7, and to the conclusions of law, and assigns other error.

*C. Horton Poe, Jr., for plaintiff, appellant.*

*Malcolm B. Seawell, Attorney General; Claude L. Love, Assistant Attorney General; Charles D. Barham, Staff Attorney for defendant, appellee.*

WINBORNE, C. J.: While the plaintiff appellant presents many assignments of error the determination of the appeal turns upon the

answer to two questions: (1) Was the award of the arbitrator timely rendered within the meaning of Section 40 of Rule VIII of the Commercial Arbitration Rules of the American Arbitration Association under which the controversy was submitted by the plaintiff and the defendant?

(2) Is the award within the terms of the submission of the controversy to arbitration?

As to the first question: It is not controverted that under applicable rules (1) "the arbitrator shall render his award promptly and, unless otherwise agreed by the parties, or specified by law, not later than thirty days from the date of closing the hearings"; (2) that in the present case the hearings before the arbitrator closed on March 19, 1957; and (3) that, consequently, the time for rendering the award expired April 18, 1957.

Moreover, the award shows on its face that it was signed by the arbitrator and "dated April 17, 1957," and "received April 18, 1957 by the Charlotte, N. C., Tribunal of the Commercial Arbitration Tribunal of the American Arbitration Association Administrator.

Upon these facts there arises the basic question as to whether the award was thereby "rendered" within the meaning of the rule specified. This Court is of opinion, and holds that it was so rendered.

It is contended by appellant that the delivery of the award to the parties, to which Section 44 relates, is a part of the "rendering" of the award, and that until it is so delivered the rendering of it is not complete. This position is untenable. Section 44 of the Rule specifies that the "parties shall accept as legal delivery of the award (a) the placing of the award or a true copy thereof in the mail by the tribunal clerk, addressed to such party at this (?) last known address * * * or (c) by the filing of the award in any manner which may be prescribed by law."

Thus the "rendering" and the "delivery" are provided for in separate sections of the rule. Time limit is specified as to "rendering", but there is no such limitation as to "delivery" of the award. If it had been intended that the time limit should apply to both it would have been natural and easy to say so in express language.

Indeed in this State, as corollary, the Uniform Arbitration Act treats the "making" of the award and the "delivery" of the award to the parties as two separate and distinct provisions. See G.S. 1-551 and G.S. 1-557.

As to the second question: Whether the award is within the terms of the submission of the controversy to arbitration, it is appropriate to look to applicable well established principles of law. In *Farmer v. Wilson*, 202 N.C. 775, 164 S.E. 356, opinion by *Brogden, J.,* this Court

declares that "All courts agree that the submission to an award is the foundation upon which the interpretation and validity of the arbitration and award is built. This prevailing idea was expressed by this Court in *Geiger v. Caldwell,* 184 N.C. 387, 114 S.E. 497, in these words: 'Turning to the authorities, we find it settled that the submission furnishes the source and prescribes the limits of the arbitrators' authority, without regard to the form of the submission. The award, both in substance and in form, must conform to the submission, and the arbitrators are inflexibly limited to a decision of the particular matters referred to them * * * A submission is in itself a contract, or agreement, or so far partakes of its nature as to be substantially within the principle applicable to contracts as 'the basis of the arbitration and award is the submission,' " citing cases. Indeed, the Court added: "The award must be interpreted in the light of the submission."

Moreover as to the parties involved it is generally held that any person who has a dispute with another person may submit to an arbitration, and it is not necessary to join all the parties who have a joint interest in the matter.

In this connection it is stated in 6 C.J.S. Arbitration and Award, Sec. 9, p. 157, that "One of several persons jointly interested in the subject matter of a controversy may submit the same to arbitration so as to bind himself without the joinder of the others, but he cannot bind the others not joining in the submission except by special authority."

While in the instant case the agreement to submit to arbitration states that separate contracts were let by the owner for plumbing, wiring, and heating, and that this controversy involves the question as to which of the contractors, if any, was responsible for the leakage— the plumbing contractor is not a party to the submission and cannot be bound by any award made. Therefore it will be assumed that plaintiff was acting for itself. It will not be assumed that the parties intended to do a vain thing.

Moreover, the agreement concedes that after the building had been completed leakage appeared in a number of showers. As to how many there were, and when they were reported by the owner to the contractor, are matters addressed solely to the arbitrator. Indeed it has been frequently said that arbitrators are not bound to decide according to law when acting within the scope of their authority, "being the chosen judges of the parties and a law unto themselves, they may award according to their notion of justice and without assigning any reason." See *Bryson v. Higdon,* 222 N.C. 17, 21 S.E. 2d 836; *Patton v. Garrett,* 116 N.C. 847, 21 S.E. 679.

In the *Patton* case it is said: " * * * If an arbitrator makes a mistake, either as to law or fact, it is a misfortune of the party, and there is no help for it. There is no right of appeal, and the court has no power to revise the decisions of 'judges who are of the parties' own choosing.' An award is intended to settle the matter in controversy and thus save the expense of litigation. If a mistake be a sufficient ground for setting aside an award, it opens the door for coming into court in almost every case; for in nine cases out of ten some mistake either of law or fact may be suggested by the dissatisfied party. Thus * * * arbitration instead of ending would tend to increase litigation." See also *King v. Mfg. Co.*, 79 N.C. 360; *Keener v. Goodson*, 89 N.C. 273; *Reizenstein v. Hahn*, 107 N.C. 156, 12 S.E. 43; *Hurdle v. Stallings*, 109 N.C. 6, 13 S.E. 720; *Wyatt v. R.R.*, 110 N.C. 245, 14 S.E. 683; *Henry v. Hilliard*, 120 N.C. 479, 27 S.E. 130; *Mayberry v. Mayberry*, 121 N.C. 248, 28 S.E. 349; *Ezzell v. Lbr. Co.*, 130 N.C. 205, 41 S.E. 99; *Millinery Co. v. Ins. Co.*, 160 N.C. 130, 75 S.E. 944.

Under these authorities an award cannot be set aside for lack of evidence and the parties are bound by the award even though it might seem unjust to them.

Indeed "The general rule is that errors of law or fact, or an erroneous decision of matters submitted to the judgment of the arbitrators, are insufficient to invalidate an award fairly and honestly made." 3 Am. Jur. Arbitration and Award, Sec. 135, p. 958. Such is the situation in present case. There is no suggestion of fraud or wrong doing.

All assignments of error have been given due consideration and, in the light of the above, ground for disturbing the award as made is not made to appear. Hence the judgment from which appeal is taken is

Affirmed.