WHD, L.P., Plaintiff-Appellee,
v.
MAYFLOWER CAPITAL, LLC, JOHN D. BROTHERS, TOM EILERS, DIANE PACE and BRENT WOOD, Defendants-Appellants.
No. COA08-541
Court of Appeals of North Carolina
Filed February 17, 2009
This case not for publication
Brooks, Pierce, McLendon, Humphrey & Leonard, L.L.P., by John W. Ormand III and David L. Neal, for Plaintiff-Appellee.
Wyrick Robbins Yates & Ponton LLP, by Charles George, for Defendant-Appellant Brent Wood.
McGEE, Judge.
WHD, L.P. (Plaintiff) filed a complaint on 11 April 2003 against Mayflower Capital, LLC, John D. Brothers (Brothers), Tom Eilers (Eilers), Diane Pace (Pace) and Brent Wood (Wood) asserting various claims arising out of the loss of funds originally loaned by Plaintiff to Mayflower Venture Capital Fund III, LLC (Fund III) and subsequently converted into an investment in Fund III.
Judge Steve A. Balog entered an order in Wake County Superior Court compelling arbitration on 22 February 2005. Plaintiff filed a demand for arbitration with the American Arbitration Association(AAA) against Brothers, Eilers, Pace, Wood, and Scott Pollock (Pollock) on 30 March 2005. An arbitration hearing was held on this matter from 27 November 2006 until 1 December 2006. The Award of Arbitrator (the award) stated that counsel for the parties had informed the arbitrator that Eilers had declared bankruptcy and was no longer a party in the arbitration. The award also stated that Plaintiff had informed the arbitrator that it had reached a settlement agreement with Pollock and was dismissing its claims against Pollock. Thus, at the time of arbitration, Plaintiff had claims pending against Brothers, Pace, and Wood.
The award included the following factual findings. Fund III, a venture capital fund, was formed on 6 March 2000 for the purpose of investing in a multitude of different business entities and investments. Wood was a member of Fund III's management committee, which was responsible for managing "[t]he business and affairs of [Fund III][.]" Wood also served as an attorney for Fund III.
Mayflower Venture Capital Fund, LLC (Fund I) and Mayflower Venture Capital Fund II, LLC (Fund II) were two funds in which Brothers, Eilers, Pace, and Wood had also been involved. Stanley Van Etten (Van Etten) was another active participant in Fund I and Fund II. Fund I and Fund II had previously made equity investments in BuildNet, Inc. (BuildNet), a company providing construction management software to homebuilders. BuildNet planned to make an initial public offering of its stock (the BuildNet IPO). As existing shareholders in BuildNet, Funds I and II were able to subscribe to a certain amount of stock at the offering price. Fund III was formed for the purpose of acquiring stock in the BuildNet IPO. Prior to 14 April 2000, the members of Fund III began trying to raise money from prospective investors, including Plaintiff, and made verbal and written representations that all funds invested in Fund III would be used for the sole purpose of acquiring BuildNet shares in the BuildNet IPO.
In reliance on these representations, Plaintiff loaned $1,000,000.00 to Fund III on 14 April 2000. Fund III signed a promissory note to Plaintiff promising repayment of the principal amount plus interest at the rate of twelve percent per year at the earliest of the following three events: (1) sixty days following the effective date of the BuildNet IPO, (2) 31 December 2000, or (3) sixty days following the withdrawal of the BuildNet IPO.
The Fund III Management Committee sent a written memorandum on 3 May 2000 to investors in Fund I, Fund II, and Fund III, telling them that the money they had loaned to Fund III was "for purposes of participating in a beneficial ownership in the BuildNet IPO after-market." The 3 May 2000 memorandum informed Plaintiff that the next step would be that Fund III would send out an offering circular, and Plaintiff would have the option to convert its loan to an equity investment in preferred units in Fund III. Fund III then distributed a term sheet on 12 May 2000 stating that the $15,000,000.00 in preferred units had been reserved for investment in the BuildNet IPO, while the funds in common units had been reserved for investment in other private companies.
Pace sent an email to Wood and Pollock on 15 May 2000reporting that Fund III had invested $7,700,000.00 in various privately held companies, designated by Fund III representatives as "portfolio companies." None of this money was invested in BuildNet at this time because BuildNet had not started its IPO.
Plaintiff received Fund III's offering circular on or about 25 May 2000. Stephen Lack (Lack), president of Plaintiff's general partner, Ned S. Holmes, Inc., was concerned about the ambiguous language of the offering circular because it did not expressly state, consistent with the previous representations to him by Fund III representatives, that all funds invested by Plaintiff would be reserved for the BuildNet IPO. Lack was also concerned that members of the Fund III management committee had been under investigation by the Securities and Exchange Commission and the United States Attorney.
Lack met with Van Etten and Pollock on 14 June 2000, the day before the deadline for Plaintiff to convert its loan to an equity investment in Fund III. Van Etten told Lack that all funds received from Plaintiff would be reserved for the BuildNet IPO. Pollock did not contradict Van Etten's statement. Plaintiff signed the documents to effect the conversion of the loan into an equity investment in Fund III on 15 June 2000. On the same day, the in-house legal counsel for Ned S. Holmes, Inc. sent an email to Wood stating that all of Plaintiff's funds "[would] be used exclusively to purchase fairly tradable public shares in the BuildNet IPO" and that Plaintiff's "funds would specifically not be used to provide a bridge loan or a private placement for BuildNet for any other company other than BuildNet." Wood received this email on 15 June 2000, the day it was sent, but he did not reply.
Eilers reported to Van Etten and the other members of the Fund III management committee on 23 June 2000 that Fund III had made loans of $1,750,000.00 and that investments totaling $9,533,000.00 had been made in seven privately held companies. None of the monies invested by Fund III had been invested in the BuildNet IPO since the BuildNet IPO had not yet occurred.
BuildNet withdrew its S-1 registration statement from the Securities and Exchange Commission on 24 October 2000. This ended BuildNet's process toward a public offering. BuildNet later filed bankruptcy.
In the award, the arbitrator found:
When considered in total, the statements made to [Plaintiff] by Brothers and Van Etten, the May 3, 2000 memorandum, the May 12, 2000 Term Sheet and the offering circular would reasonably and with certainty lead any prospective investor, including [Plaintiff], as well as its principals, to believe that any funds invested in Fund III, through the promissory note and by conversion of the promissory note issued to such investor, would not only be invested solely in the BuildNet IPO but would not be used in any other manner nor invested in any other entity.
The arbitrator issued its award on 7 March 2007 and held that North Carolina law applied to the facts of this case and that Wood, Brothers, and Pace were liable to Plaintiff for negligent misrepresentation. Specifically, the arbitrator held that:
The entire process of offering to [Plaintiff] the investment in Fund III was permeated by repeated misrepresentations on the part of all of the Respondents. The misrepresentations occurred in inducing [Plaintiff] to invest $1,000,000.00 in return for [the] promissory note, and then in inducing [Plaintiff] to convert its $1,000,000.00 investment from a promissory note to a limited liability company membership in Fund III.
The arbitrator awarded Plaintiff $1,000,000.00, for which Wood, Pace, and Brothers were jointly and severally liable. Wood filed a request for modification of award with the AAA on 27 March 2007 seeking a credit for any sum Plaintiff obtained through Plaintiff's settlement with Pollock. Plaintiff and Wood resolved Wood's request for modification of award, agreeing that any judgment entered against Wood would show a credit for Pollock's $60,000.00 settlement payment. Wood filed a motion to vacate, modify or correct the arbitration award pursuant to the North Carolina Uniform Arbitration Act (UAA) on 5 June 2007. Plaintiff filed a motion for confirmation of arbitration award and opposition to Wood's motion to vacate or modify arbitration award on 13 July 2007. Wood filed an amended motion to vacate, modify or correct arbitration award pursuant to the UAA on 31 July 2007. Plaintiff filed a response in opposition to Wood's amended motion on 8 August 2007. The trial court entered its order confirming arbitration award and judgment on 18 September 2007. Wood appeals.

I.
In his first assignment of error, Wood argues the trial court erred in confirming the arbitration award and judgment because the arbitrator exceeded his powers in failing to resolve the dispute in accordance with North Carolina law. We disagree.
"The purpose of arbitration is to reach a final settlement of disputed matters without litigation, and the parties, who have agreed to abide by the decision of the arbitrators, will not generally be heard to attack the regularity or fairness of an award." Wilson Building Co. v. Thorneburg Hosiery Co., 85 N.C. App. 684, 686, 355 S.E.2d 815, 817 (1987). Our Supreme Court has held that:
"If an arbitrator makes a mistake, either as to law or fact, it is a misfortune of the party, and there is no help for it. There is no right of appeal, and the court has no power to revise the decisions of `judges who are of the parties' own choosing.' An award is intended to settle the matter in controversy and thus save the expense of litigation. If a mistake be a sufficient ground for setting aside an award, it opens the door for coming into court in almost every case; for in nine cases out of ten some mistake either of law or fact may be suggested by the dissatisfied party. Thus [. . .] arbitration instead of ending would tend to increase litigation."
Poe & Sons, Inc. v. University, 248 N.C. 617, 625, 104 S.E.2d 189, 195 (1958) (quoting Patton v. Garrett, 116 N.C. 848, 858, 21 S.E. 679, 682-83 (1895)).
N.C. Gen. Stat. § 1-569.23 states in pertinent part that: "(a) Upon motion to the court by a party to an arbitration proceeding, the court shall vacate an award made in the arbitration proceeding if: . . . (4) An arbitrator exceeded the arbitrator's powers[.]" N.C. Gen. Stat. § 1-569.23 (2007). "Before the award can be vacated on the grounds that the arbitrator[] exceeded [his] authority, the record must objectively disclose that the arbitrator[] did exceed [his] authority in some respect." Wilson Building Co., 85 N.C. App. at 689, 355 S.E.2d at 818. "[A]n award is ordinarily presumed valid, and the party seeking to set it aside has the burden of demonstrating an objective basis which supports his allegations that one of the arbitrators has acted improperly." Thomas v. Howard, 51 N.C. App. 350, 353, 276 S.E.2d 743, 745 (1981).
Wood argues that the arbitrator exceeded his authority by misapplying North Carolina law to the facts of this case. As was stated above, our Courts have long held that "'[i]f an arbitrator makes a mistake, either as to law or fact, it is the misfortune of the party, and there is no help for it.'" Faison & Gillespie v. Lorant, 187 N.C. App. 567, 572, 654 S.E.2d 47, 51 (2007) (quoting Patton, 116 N.C. at 848, 21 S.E. at 682-83). Accordingly, this assignment of error is overruled.

II.
In his assignments of error two, three, and four, Wood argues the trial court erred in confirming the arbitration award and judgment because the arbitrator exceeded his powers by refusing to compel production of the purported settlement agreement between Plaintiff and Pollock. We disagree.
The First Amended Operating Agreement of Fund III and the Subscription Agreement of Fund III both provide that the rules of the AAA shall govern any disputes arising out of the agreements. (R p. 76). Rule 21 of the rules of the AAA provides that:
(a) At the request of any party or at the discretion of the arbitrator, consistent with the expedited nature of arbitration, the arbitrator may direct
i) the production of documents and other information, and
ii) the identification of any witnesses to be called.
(b) At least five business days prior to the hearing, the parties shall exchange copies of all exhibits they intend to submit at the hearing.
(c) The arbitrator is authorized to resolve any disputes concerning the exchange of information.
Furthermore, Rule 31 of the rules of the AAA provides in pertinent part that: "The parties may offer such evidence as is relevant and material to the dispute and shall produce such evidence as the arbitrator may deem necessary to an understanding and determination of the dispute. Conformity to legal rules of evidence shall not be necessary." Thus, pursuant to the rules of the AAA, the arbitrator was not required to compel production of the settlement agreement between Plaintiff and Pollock. We hold that the trial court did not err in failing to vacate the award of arbitrator on the grounds that the arbitrator exceeded his authority in refusing to compel production of the settlement agreement between Plaintiff and Pollock. These assignments of error are overruled.

III.
In his assignments of error five and six, Wood argues the trial court erred in failing to vacate the award of arbitrator because the arbitrator exceeded his authority by basing his award upon inadmissible evidence. We disagree.
Wood argues the questionnaires submitted to the Securities and Exchange Commission and evidence regarding the criminal convictions of Wood and Pace were inadmissible in the arbitration proceeding because this evidence was not admissible under the North Carolina Rules of Evidence. See N.C. Gen. Stat. § 8C-1, Rule 801(c) (2007). However, the UAA does not provide for an arbitration award to be set aside because of an erroneous evidentiary, procedural, or discovery ruling. See N.C. Gen. Stat. § 1-569.23 (2007). "[A]n arbitrator is not bound by substantive law or rules of evidence, [and thus] an award may not be vacated merely because the arbitrator erred as to law or fact." Sholar Bus. Assocs. v. Davis, 138 N.C. App. 298, 301, 531 S.E.2d 236, 239 (2000) (holding that alleged mistakes by arbitrator admitting parol evidence were not grounds for reversal); see also Carteret County v. United Contractors of Kinston, 120 N.C. App. 336, 347, 462 S.E.2d 816, 823 (1995) ("Since the arbitrators had the power to rule on the issue, even if they erroneously considered evidence of increased overhead expenses it would not be ground to vacate the award."). Therefore, these assignments of error are overruled.
Wood also assigns as error the trial court's failure to compel production of all documents related to Plaintiff's settlement agreement with Pollock. "However, [Wood] failed to argue this assignment of error in his brief, and it is thus deemed abandoned pursuant to Rule 28(b)(6) of the Rules of Appellate Procedure." State v. Liggons, ___ N.C. App. ___, ___, 670 S.E.2d 333, 338 (2009); see N.C.R. App. P. 28(b)(6).
Affirmed.
Judges BRYANT and GEER concur.
Report per Rule 30(e).