CAROLINA VIRGINIA FASHION EXHIBITORS, INC., A CORPORATION v. WILLIAM L. GUNTER AND ROBERT B. RUSSELL, GENERAL PARTNERS TRADING AND DOING BUSINESS UNDER THE NAME OF CHARLOTTE DEVELOP-MENT ASSOCIATES, A LIMITED PARTNERSHIP

No. 7826SC743

(Filed 5 June 1979)

**Arbitration § 7— correction of arbitration award by court—evident miscalculation—imperfection in matter of form**

The provision of G.S. 1-567.14(a)(1) allowing courts to modify or correct an arbitration award for "evident miscalculation of figures" refers only to mathematical errors committed by arbitrators which are patently clear to the reviewing court and does not permit the court to substitute its interpretation of the evidence for that of the arbitrators. Nor does the provision of G.S. 1-567.14(a)(3) which allows courts to modify or correct an award which is "imperfect in a matter of form" permit the court to substitute its interpretation of the evidence for that of the arbitrators.

APPEAL by plaintiff from *Snepp, Judge*. Judgment entered 5 April 1978 directing parties to comply with order confirming award of arbitrators dated 31 March 1978 in Superior Court, MECKLENBURG County. Heard in the Court of Appeals 1 May 1979.

The plaintiff instituted this action on 23 August 1972 for a declaration of its rights and duties as a tenant under an agreement to lease dated 23 September 1970, contemplating the construction of a building upon certain premises located in Charlotte. The plaintiff (tenant) began occupancy of the leased space on or before 1 January 1972. The building is known as the Carolina Trade Mart at 531 South College Street, Charlotte, North Carolina.

A dispute arose between the parties as to the proper construction of certain portions of the lease agreement and plaintiff commenced this action for a declaratory judgment. The parties settled a portion of the dispute and, on 2 August 1974, entered into a stipulation by which the remaining issues in dispute were submitted to arbitration. Pursuant to the stipulation, each party selected an arbitrator and the two arbitrators selected a third arbitrator.

After various hearings at which the parties submitted both documentary and testimonial evidence, together with written statements of their contentions, the arbitrators on 20 November 1974 notified the parties by mail of their decision by signing and mailing to counsel for each party a copy of the questions submitted with the questions answered and signed by each of the arbitrators. Thereafter, defendants appealed the arbitrators' award to the Superior Court of Mecklenburg County. The superior court confirmed the arbitration award and defendants appealed to this Court and petitioned the Supreme Court for discretionary review prior to determination of the cause by this Court. The Supreme Court allowed the petition and heard the case on appeal. For reasons not relevant to the case now at bar, the Supreme Court vacated and remanded the judgment of the superior court. *Carolina-Virginia Fashion Exhibitors, Inc. v. Gunter*, 291 N.C. 208, 230 S.E. 2d 380 (1976). For a full understanding of this controversy, reference is made to that opinion of our Supreme Court.

On remand, new arbitrators were appointed and they conducted new hearings, hearing testimony and receiving exhibits from both parties.

The pertinent portions of the agreement to lease for purposes of this decision are as follows:

Paragraph four provides in part:

CVFE agrees to pay CDA as rent during the term of this lease the sum of Three and seventy/100 ($3.70) Dollars per square foot of permanent show room space (plus or minus 2% to allow for design flexibility) per year in equal monthly installments payable the first of January, 1972 or on the effective date of this lease, whichever is later, and thereafter monthly in advance. In addition to said rental, CVFE agrees to pay to CDA or to its designate that proportion of (all ad valorem taxes on the land above described and any improvements thereon, all charges for public utility services thereto, and) all premiums for fire and extended coverage, public liability insurance and such multiperil coverage as CDA deems necessary in connection with the use of said land and the improvements thereon, which the total square feet of gross heated area occupied by it bears to the total square feet of gross heated area in all of the improvements con-

structed on said land, said additional payments to be made *during the term of this lease and any renewal thereof.*

Paragraph nine of the lease provides in part:

> In addition to the rental and pro-rate share of taxes, public utility charges and insurance premiums above provided for, CVFE further agrees to pay to CDA or its designate, all costs of building maintenance (exclusive of exterior walls and roof) on a basis which allocates to CVFE all of such costs attributable to its use of the building, including its use of areas used in common with others . . . . It is the intent of this agreement to lease that CVFE pay its proportional part of all expenses incurred in maintaining in good order and repair the entire premises with the exception of the parking areas, the roof, and the exterior walls of the building, including, without limitation, the air conditioning and heating systems, elevators, machinery, plumbing, wiring and all equipment used in connection with the building . . . .

In the second award of arbitrators, the new arbitrators found, in part, that plaintiff was required by the lease to pay 2/3 of all ad valorem taxes, all charges for public utility services, all premiums for fire and extended coverage and public liability insurance and multiperil coverage as defendants deemed necessary and 2/3 of all maintenance expenses reasonably necessary to preserve and maintain in good order and repair the building as it has been constructed and the grounds forming a part of the premises, including salaries of the maintenance engineer and the assistant maintenance engineer. The arbitrators' awards spelled out precisely the allowable items under the category of "maintenance expense."

On 2 December 1977 plaintiff filed an application for modification, correction and vacation of the arbitrators' award arguing, *inter alia*, that there was an "evident miscalculation of figures" pursuant to G.S. 1-567.14(a)(1) and that a portion of the award was "imperfect in a matter of form" pursuant to G.S. 1-567.14(a)(3).

On 8 December 1977, the arbitrators denied plaintiff's application.

On 31 March 1978 the trial court concluded that the second arbitrators had "determined each question stipulated by the par-

ties for their decision" and that it was "without authority to change their [a]ward in the absence of any statutory grounds for so doing."

On 5 April 1978, the trial court entered a judgment providing that the 31 March 1978 order confirming the award of the arbitrators constituted a judgment of the court and a final judgment within the meaning of G.S. 1-567.15 and directed the parties to comply with the terms of the award of arbitrators.

From the foregoing judgment, plaintiff appealed.

*Harkey, Faggart, Coira & Fletcher, by Henry Lee Harkey and Francis M. Fletcher, Jr., and Farris, Mallard & Underwood, by Ray S. Farris, for plaintiff appellant.*

*Jones, Hewson & Woolard, by Harry C. Hewson, for defendant appellees.*

CARLTON, Judge.

In its brief, plaintiff brings forward two "questions involved" from the four assignments of error in the record. The remaining assignments of error are deemed abandoned. Rule 28, N.C. Rules of Appellate Procedure.

Plaintiff contends that the trial court erred in failing to set aside and direct a modification of the arbitrators' award under G.S. 1-567.14(a)(1) in that there was an "evident miscalculation of figures" in paragraph four of the award, and under G.S. 1-567.14(a)(3) in that paragraph six of the award was "imperfect in a matter of form." We think that plaintiffs have misconstrued prevailing case and statutory law with respect to proper trial court and appellate court review of awards submitted to arbitration pursuant to Article 45A, Chapter 1, General Statutes of North Carolina. Plaintiff's brief is devoted exclusively to arguments about the arbitrators' interpretation of the evidence before them and alleged misconception of their legal responsibilities. For reasons stated hereinbelow, such arguments were irrelevant before the trial court and remain so before this Court.

The purpose of arbitration is to settle matters in controversy and avoid litigation. It is well established that parties to an arbitration will not generally be heard to impeach the regularity or

fairness of the award. Exceptions are limited to such situations as those involving fraud, misconduct, bias, exceeding of powers and clear illegality. Ordinarily, an award is not vitiated or rendered subject to impeachment because of a mistake or error of the arbitrators as to the law or facts. *See* 6 C.J.S., Arbitration, § 149, *et seq.*, p. 397. The general rule is that errors of law or fact, or an erroneous decision of matters submitted to the judgment of the arbitrators, are insufficient to invalidate an award fairly and honestly made. 5 Am. Jur. 2d, Arbitration and Award, § 167, *et seq.*, p. 643.

Of particular importance to this action is the rule that judicial review of an arbitration award is confined to determination of whether there exists one of the specific grounds for vacation of an award under the arbitration statute. 6 C.J.S., Arbitration, § 162, p. 427.

The Uniform Arbitration Act was enacted by our legislature and is codified in Article 45A, Chapter 1 of the General Statutes. The pertinent provisions of G.S. 1-567.14, upon which plaintiff relies, provide as follows:

(a) [T]he court shall modify or correct the award where:

   (1) There was an evident miscalculation of figures . . .

   . . . .

   (3) The award is imperfect in a matter of form, not affecting the merits of the controversy.

(b) If the application is granted, the court shall modify and correct the award so as to effect its intent and shall confirm the award as so modified and corrected. Otherwise, the court shall confirm the award as made.

Plaintiff argues that there was "an evident miscalculation of figures" in paragraph four of the award which provides as follows:

   The plaintiff is required and obligated to pay to the defendants two thirds of all ad valorem taxes on the land described in the agreement to lease and the presently existing improvements thereon, all charges for public utility services thereto, and all premiums for fire and extended

coverages, public liability insurance and such multiperil coverage as defendants deem necessary in connection with the use of said land and the presently existing improvements thereon.

Plaintiff further argues that paragraph six of the award is "imperfect in a matter of form." It provides, in pertinent part, as follows:

This portion of the award is concerned with the interpretation of paragraph 9 of the agreement to lease and its application to matters at issue referred to in the complaint and in evidence presented . . . .

The practice of the parties indicates they interpreted paragraph 9, as applied to the building as erected and being used, to require the plaintiff to pay two thirds of the maintenance costs to be shared. No issue is presented as to this interpretation.

. . . .

As applied to the situation in this case we award and declare *maintenance expense* to be the costs reasonably necessary to preserve and maintain in good order and repair the building as it has been constructed, added to, modified and altered, and the grounds forming a part of the premises as they have been shaped and landscaped. The building includes, without limitation, the air conditioning and heating systems, elevators, machinery, plumbing, wiring and all equipment used in connection with the building.

. . . .

Applying our interpretation of paragraph 9, to the particular prayers for relief of plaintiff designated e., f, and g, we award as follows:

The plaintiff is required to pay two thirds of that portion, and only that portion, of the cost of the following items fairly allocable to "shared maintenance expense":

e. The salaries of the maintenance engineer and the assistant maintenance engineer.

    f. The administrative expense in connection with the office of defendants' manager located in the building.

    g. 1. The purchase or rental of any tools to actually perform maintenance work.

      2. The purchase or rental of uniforms or wearing apparel for maintenance employees.

      3. The purchase or rental of tools, equipment, materials, or signs to be utilized for the upkeep of grounds.

      4. Labor costs attributable to the maintenance of the ground.

      5. Mileage and delivery charges.

With respect to paragraph four of the award, we find that plaintiff has shown no "evident miscalculation of figures" as contemplated by G.S. 1-567.14(a)(1). Plaintiff's attempt in the trial court and here amounts to an argument that the arbitrators reached the *wrong result* in determining that it was liable for two thirds of ad valorem taxes, utilities and insurance. It argues, for example, that the arbitrators applied a mistaken denominator and numerator in establishing an improper formula to reach their result. It refers to matters from the evidence relating to a determination of the square footage of the total premises and the portion occupied by it. Such arguments do not show a *miscalculation* of figures; they attempt to show a *misinterpretation* of the evidence by the arbitrators. Pursuant to the rules stated above, these are not proper considerations for courts reviewing arbitration awards. In providing that awards could be modified or corrected for "evident miscalculation of figures," we think our legislature had reference only to mathematical errors committed by arbitrators which would be patently clear to a reviewing court. G.S. 1-567.14(a)(1) is not an avenue for litigants to persuade courts to review the evidence and then reach a different result because it might be interpreted differently. Such an interpretation of the statute would completely frustrate the underlying purposes of the arbitration process.

With respect to paragraph six we find that plaintiff has not shown this portion of the award to be "imperfect in a matter of

form" as contemplated by G.S. 1-567.14(a)(3). Here, again, plaintiff attempts to have the reviewing courts interpret the evidence differently from the arbitrators. It argues, essentially, that the evidence does not support the arbitrators' award that plaintiff should pay two thirds of maintenance expenses, what maintenance expenses are properly allowable, and how the parties interpreted their own contract. It refers to numerous matters of evidence to support its argument. Again, such review of the evidence is not our function, nor was it the function of the trial court. Plaintiff also argues that the arbitrators "abrogated their responsibility" with respect to this question in the controversy. Hence, the award is "imperfect as a matter of form." However, the record disclosed that the parties stipulated that the arbitrators would provide "an interpretation of the meaning of paragraph 9 of the Agreement as it applies to the matters referred to in the Complaint." Paragraph nine of the Agreement to Lease is the portion of the controversy addressed by paragraph six of the award. Plaintiff here, therefore, is arguing not with the *form* of the award, but with the result. The arbitrators did what they were requested to do: They interpreted this portion of the lease. Plaintiff disagrees with their interpretation and in essence requests that we substitute our interpretation for that of the arbitrators. This we are not allowed, nor inclined, to do.

With respect to both portions of the award in question here, we note that subsection (b) of G.S. 1-567.14 provides that when the court does modify and correct an award for the reasons allowed in subsection (a), it shall do so to effectuate "the intent" of the arbitrators. Clearly, the legislative intent is that only awards reflecting mathematical errors, errors relating to form, and errors resulting from arbitrators exceeding their authority shall be modified or corrected by the reviewing courts. Courts are not to modify or correct matters affecting the merits which reflect the intent of the arbitrators. Here, we find the intent of the arbitrators to be crystal clear and none of the statutory grounds for modification, correction or vacation of the award have been shown. We are therefore not prone to disturb the arbitrators' decision.

We find these established North Carolina rules especially pertinent to the case at bar:

If an arbitrator makes a mistake, either as to law or fact, it is the misfortune of the party, and there is no help for it. There is no right of appeal and the Court has no power to revise the decisions of "judges who are of the parties' own choosing." An award is intended to settle the matter in controversy, and thus save the expense of litigation. If a mistake be a sufficient ground for setting aside an award, it opens a door for coming into court in almost every case; for in nine cases out of ten some mistake either of law or fact may be suggested by the dissatisfied party. Thus . . . arbitration, instead of ending would tend to increase litigation. *Poe & Sons, Inc. v. University*, 248 N.C. 617 at 625, 104 S.E. 2d 189, 195 (1958) quoting *Patton v. Garrett*, 116 N.C. 847, 21 S.E. 679 (1895).

For the reasons stated, the judgment of the court below is

Affirmed.

Judges VAUGHN and CLARK concur.