**CHATTANOOGA AREA REGIONAL TRANSPORTATION AUTHORITY ("CARTA")**

v.

**LOCAL 1212 AMALGAMATED TRANSIT UNION.**

Court of Appeals of Tennessee, Eastern Section, at Knoxville.

April 3, 2006 Session.

May 1, 2006.

Permission to Appeal Denied by Supreme Court Oct. 9, 2006.

George M. Derryberry, Chattanooga, Tennessee, for appellant.

Jimmy F. Rodgers, Jr., Chattanooga, Tennessee, for appellee.

## OPINION

HERSCHEL PICKENS FRANKS, P.J., delivered the opinion of the court, in which CHARLES D. SUSANO, JR., J., and D. MICHAEL SWINEY, J., joined.

Plaintiff discharged employee for cause. Arbitrator reinstated employee and plaintiff brought this action to reverse the arbitrator's decision. The Trial Court upheld the arbitrator's award, and we affirm.

Plaintiff, Chattanooga Area Regional Transportation Authority ("CARTA"),

brought this action to negate the arbitrator's reinstating one of plaintiff's employees who had been discharged by plaintiff.

The Complaint averred that the parties entered a Collective Bargaining Agreement which controlled wages, hours, and other terms of employment for the employees within the bargaining unit at CARTA. The Collective Bargaining Agreement was attached to the Complaint, as well as the Code of Conduct for employees.

Plaintiff terminated employee Bill Nye, whose grievance was then arbitrated pursuant to the Collective Bargaining Agreement, and the arbitrator's award, which was attached to the Complaint, found that CARTA adequately informed its employees of the prohibition against pocketing tickets, and that Nye was specifically aware of the correct ticket handling procedures. The award found that Nye was guilty of mishandling fares, and that this was a level five offense, which provided for discharge with no progressive disciplinary steps. The arbitrator concluded, however, that the discharge of Nye was too severe, and ordered Nye be reinstated. The arbitrator reasoned that, based on the magnitude of the revenue shortfall during the relevant period, the mishandling was widespread and involved more than 2 or 3 employees. The arbitrator thus stated that, while Nye was guilty of mishandling fares, many other employees were as well, and he "must not be required to shoulder the burden of guilt, when, as a result of a brief, cursory investigation the Company was unable to 'catch' other involved parties."

CARTA further alleged that the arbitrator exceeded his powers, and his award should be vacated pursuant to Tenn.Code Ann. § 29–5–313(3). In the alternative, it alleged that the award was on a matter not subject to arbitration, and this rendered

the award modifiable pursuant to Tenn. Code Ann. § 29–5–314(a)(2).

After the Union answered, CARTA filed a Motion to Vacate or Modify Arbitration Award, asserting that the award should be vacated pursuant to Tenn.Code Ann. § 29–5–313(a)(3) because the arbitrator exceeded his powers by reinstating a discharged employee. In the alternative, CARTA asserted that the award should be modified by vacating or striking the portion which ordered reinstatement. CARTA attached an Affidavit of George Derryberry, along with various exhibits. Derryberry, as counsel for CARTA, basically stated that the exhibits are true and accurate copies of the various documents.

Defendant filed a response to the motion, asserting that the CARTA Employee Handbook and Code of Conduct was not negotiated, and was not a part of the Collective Bargaining Agreement.

A hearing was conducted on February 10, 2005 on the Motion, and the Court subsequently issued a Memorandum Opinion and Order. The Court stated that the parties agreed that the issues submitted to the arbitrator were whether Nye "was discharged for just cause, and .... what is the appropriate remedy." The Court found the arbitrator determined CARTA had just cause to take some action, but did not have cause to discharge Nye.

The Court discussed the Uniform Arbitration Act, and its provisions, and observed that the Court's review of the arbitrator's decision was limited to the statutory grounds for modifying or vacating an award. The Court noted that it was to give deference to the arbitrator's award.

The Court found that it was undisputed that the Code of Conduct prescribed discharge for the offense that Nye committed, but noted that if the Code of Conduct was a contract between the parties, then the arbitrator exceeded his powers by rewriting the contract and his award should be vacated. However, the Court found that the Collective Bargaining Agreement executed by the parties provided that the Code of Conduct was left to the discretion of CARTA, but was governed by reasonableness of rules and just cause for discharge. The Court held that a similar Collective Bargaining Agreement was interpreted by this Court to hold the term "just cause" as arbitrable. *Citing Adams TV of Memphis, Inc. v. Int'l Brotherhood of Electrical Workers, Local 474,* 932 S.W.2d 932 (Tenn.Ct.App. 1996)). The Court stated that after reviewing the Collective Bargaining Agreement, it found that the Code of Conduct was clearly intended to be under the sole discretion of CARTA, and that CARTA had the exclusive right to make reasonable rules regarding employees' conduct, to enforce discipline for violation of rules, and to discharge employees for just cause. The Court found that the Collective Bargaining Agreement was silent regarding the specific policies that are reasonable, the appropriate disciplines, and what constitutes just cause, and thus found that the arbitrator did not exceed his authority in failing to adhere to the Code of Conduct. The Court then Ordered the arbitrator's award affirmed and dismissed the Complaint.

 Following denial of a Motion to Order or Amend, CARTA appealed to this Court, and these issues are presented for review:

1. Did the trial court err in concluding that the negotiated Code of Conduct, which clearly specified discharge as the sole discipline for mishandling fares, was not entitled to be enforced?

2. Did the trial court err in failing or refusing to give preclusive, collateral estoppel effect to a prior final and binding arbitration award between the same parties, as to an issue that was identical, and necessary to the result in both the prior and in the instant proceedings?

3. Did the trial court err in holding that its judgment finding that the arbitrator did not exceed his powers was compelled by the decision in *Adams TV of Memphis, Inc. v. Int'l Brotherhood of Electrical Workers, Local 474*, 932 S.W.2d 932 (Tenn.Ct. App.1996)?

4. Did the trial court err in concluding that the arbitrator, who found the employee guilty of an offense for which the Code of Conduct mandated discharge, but reinstated the employee, did not exceed his powers pursuant to Tenn.Code Ann. § 29–5–313(a)(2)?

5. Whether sanctions should be imposed on CARTA pursuant to Tenn. Code Ann. § 27–1–122 for filing a frivolous appeal?

The provisions of Tenn.Code Ann. § 29–5–301 *et seq.* (Uniform Arbitration Act) control this controversy over the arbitrator's award. Tenn.Code Ann. § 29–5–313 provides that an arbitration award shall be vacated where it is shown that the arbitrator exceeded his/her powers. The trial court cannot vacate an award just because the court feels that the arbitrator erred-the court is limited to the statutory grounds only. *Davis v. Reliance Elec.*, 104 S.W.3d 57 (Tenn.Ct.App.2002). We are required to apply a "deferential standard of review", and accept the facts as found by the trial court unless they are erroneous. We are "not permitted to consider the merits of an arbitration award even if the parties allege that the award rests on errors of fact or misrepresentation of the contract." *Arnold v. Morgan Keegan & Co.*, 914 S.W.2d 445, 450 (Tenn. 1996). When the issues presented are questions of law, we are required to resolve them with "utmost caution, and in a manner designed to minimize interference with an efficient and economical system of alternative dispute resolution." *Id.* An arbitration award cannot be vacated because the arbitrator made a mistake of fact or law, and it also cannot be vacated because it is irrational, or provides relief that could not or would not be granted by the court. *Id.* The Supreme Court has explained the basis for the foregoing:

With regard to arbitration in general, the Court of Appeals of North Carolina in *Carolina Virginia Fashion Exhibitors, Inc. v. Gunter*, 41 N.C.App. 407, 255 S.E.2d 414 (1979), has stated:

If an arbitrator makes a mistake, either as to law or fact, it is a misfortune of the party, and there is no help for it. There is no right of appeal and the Court has no power to revise the decisions of "judges who are of the parties' own choosing." An [arbitration] award is intended to settle the matter in controversy, and thus save the expense of litigation. If a mistake be a sufficient ground for setting aside an award, it opens a door for coming into court in almost every case; for in nine cases out of ten some mistake either of law or fact, may be suggested by the dissatisfied party. Thus ... arbitration, instead of ending would tend to increase litigation. 255 S.E.2d at 420. By enacting the statutes that provide for arbitration of disputes, the General Assembly has recognized that this form of alternative dispute resolution should be made available to all citizens. This Court, following the lead of the legislature, has established a Commission on Alternative Dispute Res-

olution and has recently promulgated rules that will permit and encourage a wider judicial presence and greater participation in alternative dispute resolution. Admittedly, our investment in this process is heavy; nevertheless, if alternative dispute resolution is to succeed, there must be finality—finality of arbitration awards and decisions.

*Id.*, at 451–452.

The crux of CARTA's argument is that the arbitrator exceeded his powers by failing to enforce the discipline set out in the Code of Conduct. The Supreme Court has held that an arbitrator exceeds his/her powers when the issue decided is not within the scope of the agreement to arbitrate. *D & E Const. Co., Inc. v. Robert J. Denley Co., Inc.*, 38 S.W.3d 513 (Tenn.2001). In *D & E*, the Supreme Court set aside an award of attorney's fees because the arbitrator exceeded its power, since the contract did not provide for an award of attorney's fees. *Accord, Int'l Talent Group, Inc. v. Copyright Management, Inc.*, 769 S.W.2d 217 (Tenn.Ct.App.1988).

In this case, the Collective Bargaining Agreement contains the agreement to arbitrate, and it states:

> Properly accredited CARTA Management officials shall meet and treat with properly accredited committees or officers of the Union who may be employees of CARTA or general officers of the Amalgamated Transit Union on all questions and grievances arising out of the interpretation or application of the terms of this Agreement that may arise during the life of this Agreement. Should there be any questions or grievances that cannot be amicably adjusted by such conference, they shall be submitted to a Board of Arbitration selected following the procedure herein provided.... The Board of Arbitration selected in this manner shall hear and determine the dispute, and the written decision of the majority of the Board of Arbitration shall be final and binding on the parties hereto.

Regarding discipline, the Collective Bargaining Agreement also provides that an employee who has been discharged has the right to have "his case taken up by the officers or committee of the Union with the CARTA Management, in accordance with the grievance procedure herein set out, and in such cases, where upon investigation and before arbitration it is found and mutually agreed upon between the parties that such employee who has been suspended or discharged was not guilty of the wrongs, matters or things for which he was discharged, he shall be reinstated to his former position . . .".

The Collective Bargaining Agreement also contains a section titled "CARTA RIGHTS", which states that CARTA has the exclusive right to set policy and manage its business, to determine the qualifications of employees for certain positions, to determine the number of employees it will have, etc. CARTA is also given the right to "make reasonable rules and regulations governing the operation of its business and the conduct of its employees; to enforce discipline for violation of rules and other misconduct; to discharge employees for just cause; . . .".

CARTA adopted its Code of Conduct pursuant to this provision in the Collective Bargaining Agreement, although it now asserts that the Code of Conduct was negotiated by the parties, and that the Union had input into its content. The Handbook/Code of Conduct expressly states, however, that its policies are "not intended to create a contract, nor are they to be construed to constitute contractual obligations of any kind or a contract of employment between CARTA and any of its employees. The provisions of the hand-

book have been developed at the discretion of management and may be amended or cancelled at any time, at CARTA's sole discretion."

█ The Collective Bargaining Agreement neither references the Code of Conduct, nor adopts it, and as the Supreme Court has previously explained:

It is a familiar principle of construction that if the actual language and provisions of the document are plain and clear and are devoid of contradiction or any affirmative ambiguity, there is no judicial duty but to give the language its usual and ordinary meaning.

*Gilmore v. Continental Casualty Co.*, 188 Tenn. 588, 221 S.W.2d 814 (1949). Thus, the Trial Court correctly held that the Code of Conduct was not a contract between the parties, and was not part of the Collective Bargaining Agreement, according to its terms.

CARTA relies on *Div. 85, Amalgamated Transit Union v. Port Authority of Allegheny County*, 62 Pa.Cmwlth. 528, 437 A.2d 105 (1981); *City of Easton v. Amer. Fed. Of State, County and Municipal Employees, AFL–CIO, Local 447*, 562 Pa. 438, 756 A.2d 1107 (2000), for its proposition that the Code of Conduct should be determined to be a part of the Collective Bargaining Agreement. But a review of these cases demonstrates that they do not support that position, as the Trial Court also concluded.

█ Next, CARTA asserts that the stipulation referenced in a prior arbitration award that the Code of Conduct was negotiated should have preclusive collateral estoppel effect in this case.

█ CARTA states the law correctly. "Under the doctrine of collateral estoppel, when an issue has been actually and necessarily determined in a former action between the parties, that determination is conclusive upon them in subsequent litigation." *King v. Brooks*, 562 S.W.2d 422, 424 (Tenn.1978). However, to establish collateral estoppel, a party must demonstrate that the issue was actually litigated and determined in the prior action.

As the Trial Court found, the issue of whether the Code of Conduct was a part of the Collective Bargaining Agreement was not litigated and determined by the tribunal in the prior arbitration award. Importantly, as the Trial Court also noted, the Collective Bargaining Agreement involved in that prior award was a different version than the one at issue here. The Trial Court properly determined that collateral estoppel would not apply.

Finally, CARTA argues that the Trial Court's reliance on *Adams TV of Memphis, Inc.*, was misplaced, because in that case, there was no specific system of discipline set out in the Collective Bargaining Agreement. The same is true in this case, however, because the Code of Conduct is not a part of the parties' contract. Thus, the Trial Court's reliance on that case was appropriate, and the Trial Court properly confirmed the arbitration award.

The Union asserts that it should be awarded sanctions against CARTA for the filing of a frivolous appeal. This appeal, however, was not so frivolous or devoid of merit that warrants an award of sanctions.

For the foregoing reasons, we affirm the Judgment of the Trial Court and remand, with the cost of the appeal assessed to the Chattanooga Area Regional Transportation Authority.