CALABRIA, Judge, dissenting.
Although the majority correctly cites Dworsky v. Travelers Ins. Co., 49 N.C.App. 446, 271 S.E.2d 522 (1980) regarding the substantial right justifying immediate appeal of an interlocutory order denying discovery, I do not believe the majority correctly applies the law to the facts of this case. Plaintiff has demonstrated he would be deprived of the substantial right contemplated by Dworsky sufficient to justify immediate review. Alternatively, I would allow plaintiff's petition for a writ of certiorari to address his appeal on the merits. Either way, the trial court erred by concluding there is no pending action within which discovery may be *766 propounded and abused its discretion by denying plaintiff's limited discovery requests. The trial court's ruling should be reversed and this case should be remanded. For these reasons, I respectfully dissent.
I. The Order's Appealability
The majority correctly states that pursuant to the Family Law Arbitration Act ("FLAA"), there is no statutory right to appeal from an order or judgment denying discovery, see N.C. Gen.Stat. § 50-60(a) (2015), and that a common canon of statutory construction is that statutes of general application yield to statutes of more specific application. However, the catch-all language of FLAA's subsection (a)(6) provides plaintiff a route to appeal this interlocutory order. See N.C. Gen.Stat. § 50-60(a)(6) (permitting appeal from "[a] judgment entered pursuant to provisions of this Article"). Notably absent from that provision is the requirement under the North Carolina Revised Uniform Arbitration Act ("RUAA") that this be a "final" judgment. See N.C. Gen.Stat. § 1-569.28(a)(6) (2015). Although the majority acknowledges that "order" and "judgment" are often used interchangeably, see, e.g., Bullard v. Tall House Bldg. Co., 196 N.C.App. 627, 636, 676 S.E.2d 96, 102 (2009) (interpreting *544 the RUAA and concluding that "[a]s the order before us directs further arbitration, it is not a final judgment"), it asserts that judgments normally refer to a court's final ruling. Although this may be true, the majority's reasoning is conclusory: citing to a case for authority which quotes the familiar distinction made between a "final judgment" and an "interlocutory order," see Veazey v. City of Durham, 231 N.C. 357, 361, 57 S.E.2d 377, 381 (1950) (emphases added), begs the question of whether judgments are typically final. That N.C. Gen.Stat. § 7A-27(b)(3)(a) (emphasis added) explicitly provides for appeal from "any interlocutory judgment or order" seems to indicate that even judgments may be interlocutory. The legislature acknowledged by statute that in drafting the FLAA, it considered certain provisions of the RUAA. See N.C. Gen.Stat. § 50-62(a) ("Certain provisions of this Article have been adapted from the Uniform Arbitration Act formerly in force in this State, the [RUAA] in force in this State, the North Carolina International Commercial Arbitration and Conciliation Act, and Chapters 50, 50A, 50B, 51, 52, and 52C of the General Statutes. This Article shall be construed to effect its general purpose to make uniform provisions of these Acts and Chapters[.]"). However, the majority appears to interpret the legislature's decision to exclude the term "final" from the FLAA, in contradiction to the RUAA, as evidence the legislature intended to include it.
Assuming that the legislature purposefully excluded "final," as the six subsections governing appeals pursuant to the RUAA and FLAA
*767 are identical save for this lone difference, subsection (c) provides that "[t]he appeal shall be taken in the manner and to the same extent as from orders or judgments in a civil action." N.C. Gen.Stat. § 50-60(c) (emphasis added). N.C. Gen.Stat. § 7A-27(b)(3)(a), which provides for the extent of appeals in civil actions, permits a plaintiff the right to appeal an interlocutory order or judgment that affects a substantial right. Id. (permitting appeal from "any interlocutory order or judgment of a ... district court in a civil action or proceeding that ... [a]ffects a substantial right") (emphasis added).
Furthermore, this Court has considered whether an interlocutory order would deprive an appellant of a substantial right, even where there was no statutory right of appeal from arbitration. See Bullard, 196 N.C.App. at 637, 676 S.E.2d at 103 (engaging in a substantial right analysis of an interlocutory order specifically noted by this Court as nonappealable pursuant to the governing arbitration statute); see also Laws v. Horizon Hous., Inc., 137 N.C.App. 770, 771, 529 S.E.2d 695, 696 (2000) (considering whether appeal from an order not listed in the governing arbitration statute affects a substantial right); Bluffs, Inc. v. Wysocki, 68 N.C.App. 284, 284, 314 S.E.2d 291, 292 (1984) (same). Therefore, even when a specific order or judgment is not listed as one of the types of appeal permitted under the FLAA, an appeal of an interlocutory order or judgment may still be permitted if an appellant can demonstrate that absent immediate review, he would be deprived of a substantial right.
II. Substantial Right Implicated
Orders denying or allowing discovery are generally interlocutory, and therefore, typically not appealable unless they affect a substantial right which would be lost if the ruling were not reviewed before final judgment. Dworsky, 49 N.C.App. at 447-48, 271 S.E.2d at 523 (citation omitted). Whether an interlocutory ruling affects a substantial right requires consideration of the facts of the case and the procedural context of the order on appeal. Dep't of Transp. v. Rowe, 351 N.C. 172, 175, 521 S.E.2d 707, 709 (1999) (citation omitted). A party has a substantial right justifying immediate appeal of an order denying discovery if
the desired discovery would not have delayed trial or have caused the opposing party any unreasonable annoyance, embarrassment, oppression or undue burden or expense, and if the information desired is highly material to a determination of the critical question to be resolved in the case[.]
*768 Dworsky, 49 N.C.App. at 447-48, 271 S.E.2d at 523 ; see also Tennessee-Carolina Transportation, Inc. v. Strick Corp., 291 N.C. 618, 629, 231 S.E.2d 597, 603 (1977) (holding that *545 a pretrial order denying discovery of evidence "highly material to the determination of the critical question to be resolved" in the pending action deprived appellant of a substantial right sufficient to justify immediate appeal); Starmount Co. v. City of Greensboro, 41 N.C.App. 591, 593, 255 S.E.2d 267, 268 (1979) (dismissing appeal of interlocutory order denying discovery in light of Tennessee-Carolina Transportation, because "the information denied the defendant in the case ... [was not] crucial to its defense").
The majority does not attempt to distinguish this case from Tennessee-Carolina Transportation or Dworsky or even address those cases at all. Instead, the majority focuses its discussion on distinguishing two cases- Carolina-Virginia Fashion Exhibitors, Inc. v. Gunter, 291 N.C. 208, 219, 230 S.E.2d 380, 388 (1976) and William C. Vick Constr. Co. v. N.C. Farm Bureau Fed'n, 123 N.C.App. 97, 472 S.E.2d 346, disc. review denied, 344 N.C. 739, 478 S.E.2d 14 (1996) -that held the trial court was permitted to grant a party to an arbitration post-award discovery based on potential arbitrator misconduct, cases which plaintiff advanced to support his position that "the [d]istrict [c]ourt clearly has authority to allow discovery in the context of Plaintiff's Motion to Vacate." (emphasis added).
In light of the applicability of Tennessee-Carolina Transportation and Dworsky to plaintiff's appeal, I find it appropriate to address these cases. The substantial right claimed in the instant case originated from Tennessee-Carolina Transportation. As this Court recently explained:
In Tennessee-Carolina Transportation, the defendant sold 150 trailers to the plaintiff, and the plaintiff subsequently sued the defendant for breach of an implied warranty of fitness based upon allegations that certain metal in the trailers did not "measure up to the proper degree of hardness." Prior to trial, the defendant appealed from the trial court's discovery order prohibiting the defendant from taking the deposition of an out-of-state expert witness who, at the plaintiff's request, had conducted tests on some of the trailers to determine the hardness of the relevant metal.
The Supreme Court held that the appealed order affected a substantial right of the defendant because the order "effectively preclude[d] the defendant from introducing *769 evidence of the 'readings' concerning the hardness of the metal obtained by the tests which [the expert] made"-evidence that was "highly material to the determination of the critical question to be resolved " at trial. The Court further noted that nothing in the record indicated that the taking of the expert's deposition would have delayed the trial or would have caused the plaintiff or the expert any unreasonable annoyance, embarrassment, oppression, or undue burden or expense.
Britt v. Cusick, 231 N.C.App. 528, 531-32, 753 S.E.2d 351, 354 (2014) (internal citations omitted) (emphasis added). In addition, the Tennessee-Carolina Transportation Court reasoned:
It would be highly impractical to proceed with the third trial of this complex action and then let the defendant, if unsuccessful again before the jury, appeal for the reason that it was denied the right to offer evidence of the "readings" obtained by [the expert's] testing of a now undetermined number of the trailers. The sensible thing to do is to determine this question before the parties, their witnesses and the trial court are put to the expense and time consuming effort of a third trial on the merits.
Tennessee-Carolina Transportation, 291 N.C. at 625, 231 S.E.2d at 601-02 (emphasis added).
In Dworsky, the plaintiffs sought to recover hospital and medical expenses that the defendant-insurer refused to pay under an insurance policy. The plaintiffs appealed from the trial court's pretrial order denying a discovery request to inspect and copy the entire contents of a file maintained by the defendant in connection with the plaintiffs' claim under the insurance policy. This Court held that the pretrial order did not affect a substantial right when the plaintiffs had failed to identify, and the record failed to disclose, "what relevant and material information ... sought [was] so crucial to the outcome of [the] case that it would deprive *546 them of a substantial right and thus justify an immediate appeal." 49 N.C.App. at 448, 271 S.E.2d at 524.
Tennessee-Carolina Transportation and Dworsky illustrate the difference between a discovery order that affects a substantial right sufficient to justify immediate appeal and one that does not. See, e.g., Britt, 231 N.C.App. at 532, 753 S.E.2d at 355 (distinguishing Tennessee-Carolina Transportation because the discovery order appealed from merely regulated the manner of discovery, but did not prohibit it, and *770 therefore did not "effectively preclude[ ] the defendant[s] from introducing evidence" that was "highly material to the determination of the critical question to be resolved"); Harbour Point Homeowners' Ass'n, Inc. v. DJF Enters., Inc., 206 N.C.App. 152, 161, 697 S.E.2d 439, 446 (2010) (distinguishing Dworsky because discovery order granted discovery and because the plaintiff failed to show the two-page memo in question was "highly material" to the "critical question to be resolved in the case"); James v. Bledsoe, 198 N.C.App. 339, 345-46, 679 S.E.2d 494, 498 (2009) (distinguishing Dworsky because the plaintiff failed to show the discovery sought was "highly material to a determination of whether [the defendants] published false statements with actual malice"). Unlike the cases seeking discovery of evidence that is not highly material to a critical issue in the pending action, the discovery order in the instant case precluded plaintiff from introducing evidence related to the communications, negotiations, and agreements to sell DSA to United Drug, evidence that is "highly material" to whether the arbitration award was "procured by corruption, fraud, or other undue means." N.C. Gen.Stat. § 50-54(a)(1). Plaintiff has sufficiently demonstrated that this discovery order affects the substantial right contemplated by Tennessee-Carolina Transportation and Dworsky.
In the instant case, the trial court concluded "[t]here is no pending action between Plaintiff and Defendant in which discovery may be propounded [.]" However, plaintiff's Motion to Vacate Arbitration Award and Set Aside Order based on allegations that the arbitration award was procured by fraud is pending. The "relevant and material information" plaintiff has identified would help the court to determine whether defendant concealed and omitted material facts regarding the eventual sale of DSA to United Drug. More specifically, the information would enlighten the court's inquiry as to "whether Defendant had begun negotiations with United Drug prior to settling Plaintiff's equitable distribution claim, and whether she withheld information supporting a higher valuation of her interest in DSA than what the parties had stipulated." The majority inaccurately describes plaintiff's investigation as a "fishing exhibition." This is an unfair characterization because plaintiff's discovery request is narrowly focused with a stated objective. See Dworsky, 49 N.C.App. at 448, 271 S.E.2d at 524 (noting that while some relevant and material evidence may be contained in the entire contents of the file the plaintiffs sought, "plaintiffs are not entitled to a fishing expedition to locate it").
Moreover, "[a]ppellate procedure is designed to eliminate the unnecessary delay and expense of repeated fragmentary appeals, and to present the whole case for determination in a single appeal from the final *771 judgment." City of Raleigh v. Edwards, 234 N.C. 528, 529, 67 S.E.2d 669, 671 (1951) (citations omitted). The purpose of the rules limiting immediate appeal of interlocutory orders is "to prevent ... appeals that unnecessarily delay the administration of justice and to ensure that the trial divisions fully and finally dispose of the case before an appeal can be heard." Bailey v. Gooding, 301 N.C. 205, 209, 270 S.E.2d 431, 434 (1980) (citations omitted).
In the instant case, dismissing plaintiff's appeal as interlocutory serves only to delay the administration of justice with regard to the pending action, as well as to burden both parties and the courts with unnecessary expense. The concern that the whole case is not presented for appeal is nonexistent when plaintiff is effectively precluded from discovering and introducing the "clear evidence[,]" Pinnacle Grp., Inc. v. Shrader, 105 N.C.App. 168, 171, 412 S.E.2d 117, 120 (1992), required to support the grounds under which he seeks to vacate the arbitration award. See *547 N.C. Gen.Stat. § 50-54(a)(1) (providing for vacation of an arbitration award "procured by corruption, fraud, or other undue means").
The practical reasoning of the Tennessee-Carolina Transportation Court is particularly instructive: "It would be highly impractical" to proceed with plaintiff's motion to vacate without addressing the discovery order and let him, if unsuccessful, appeal again for the reason that he was denied his right to discover evidence regarding the timing of the sale. "The sensible thing to do is to determine this question" now. Tennessee-Carolina Transportation, 291 N.C. at 629, 231 S.E.2d at 603-04. Plaintiff's appeal should proceed.
III. Discovery Order
The majority correctly states that this Court reviews a trial court's discovery ruling under an abuse of discretion standard. Dworsky, 49 N.C.App. at 448, 271 S.E.2d at 523. "To demonstrate an abuse of discretion, the appellant must show that the trial court's ruling was manifestly unsupported by reason, or could not be the product of a reasoned decision." Nationwide Mut. Fire Ins. Co. v. Bourlon, 172 N.C.App. 595, 601, 617 S.E.2d 40, 45 (2005) (internal citations omitted). The majority also correctly cites to Fashion Exhibitors and William C. Vick Construction Co. for the proposition that when "an objective basis exists for a reasonable belief" of arbitrator misconduct, parties may depose arbitrators as to that alleged misconduct and such evidence is admissible in a proceeding to vacate an award. However, I disagree with the majority's discussion and application of these cases to the instant case.
*772 The majority determined that the trial court properly denied discovery by conflating "an objective basis ... for a reasonable belief " with " specific, 'objective' evidence" of misconduct. It is a misinterpretation of significant magnitude to apply so broadly a holding that appears to be carefully narrowed. See Fashion Exhibitors, 291 N.C. at 219, 230 S.E.2d at 388 ("[W]e hold that where an objective basis exists for a reasonable belief that misconduct has occurred, the parties to the arbitration may depose the arbitrators relative to that misconduct[.]") (emphasis added). Discovery yields specific, objective evidence. Since "an objective basis ... for a reasonable belief" precedes the "specific, 'objective' evidence" sought to be discovered, I do not believe the requirement under Fashion Exhibitors to show an "objective basis ... for a reasonable belief [of misconduct]" equates with the majority's requirement to "identify specific, 'objective' evidence of misconduct."
Furthermore, I believe the holdings of these cases should extend beyond arbitrator misconduct and apply to the conduct of a party. The logical extension of the principle promulgated by Fashion Exhibitors is that if post-award discovery may be propounded to uncover evidence of arbitrator misconduct, it may also be propounded to uncover evidence that an award was "procured by corruption, fraud, or other undue means" of a party, as both are statutorily recognized as grounds to vacate an arbitration award. Compare N.C. Gen.Stat. § 1-569.23(a)(1) (specifying grounds to vacate under the RUAA), with N.C. Gen.Stat. § 50-54(a)(1) (specifying identical grounds to vacate under the FLAA). The majority's interpretation might effectively bar post-award discovery-discovery based on an "objective basis for a reasonable belief " of misconduct that is sought to identify the specific, objective evidence of misconduct required to vacate an arbitration award-unless the moving party can somehow first identify the specific, objective evidence of misconduct it seeks to discover. Declining to apply Fashion Exhibitors to the instant case, "would deprive the aggrieved party of its most effective means of ascertaining and proving the alleged misconduct." Fashion Exhibitors, 291 N.C. at 219, 230 S.E.2d at 388 (emphasis added).
IV. Specific, Objective Evidence of Misconduct
Even if Fashion Exhibitors and William C. Vick Construction Co. stand for the principle that the majority concludes-that a party must first identify "specific, 'objective' evidence of misconduct prior to seeking post-award discovery as part of a motion to vacate an arbitration award"-I conclude that plaintiff has carried his burden.
*548 *773 Plaintiff presented the following evidence: The trial court entered the Consent Order to Arbitrate Equitable Distribution and Child Support on 18 August 2011. The parties disagreed for months about the value of defendant's shares of stock in DSA. Both parties retained business appraisers to arrive at an agreeable valuation of the stock. Plaintiff's expert, A.E. Strange, based his valuation of defendant's shares with the understanding, based on his requests for the production of documents and interviews with defendant, that there were no written or oral offers to purchase DSA and defendant had no intent to sell any or all of DSA. Strange explained (emphasis added): "Information with respect to any written or oral offers to purchase DSA, or any plans to sell all or part of DSA, would have been material to my final valuation and conclusions, as information regarding a sale, potential sale, or plans to sell, is critical to any business valuation." In April 2012, plaintiff and defendant entered into a pre-arbitration agreement, which was submitted to the arbitrator in advance of the arbitration proceeding to settle equitable distribution. In this agreement, defendant contended her value of shares of stock in DSA ranged from $3,340,000 to $3,934,930, and plaintiff contended defendant's value of stock ranged from $3,750,000 to $4,275,000.
At arbitration, the parties stipulated that the value of defendant's ownership interest in DSA was worth $3,485,000. The parties entered into an Equitable Distribution Arbitration Award by Consent on 18 May 2012, which was judicially confirmed that same day. Only 48 days later, on 5 July 2012, defendant allegedly signed a letter of intent to sell DSA to United Drug for $28,000,000.[2] Nevertheless, the majority concluded that "[a]lthough Plaintiff finds this sequence of events suspicious, he has not directed this Court to any specific, 'objective' evidence of misconduct by Defendant that would necessitate post-award discovery." I disagree.
Plaintiff directed this Court to a series of e-mails beginning in November 2011 between Doug Townsend and Liam Logue discussing the potential sale of DSA to United Drug, which provided in pertinent part:
Liam,
Cathy Stokes asked me to follow up with you regarding yours and United Drug's interest in strengthening its US-based pharmacovigilence services.
*774 My schedule the next couple of weeks is flexible. Are there a few times that would be convenient for you to discuss United Drug and DSA? ?
Thanks,
Doug Townsend
....
Liam,
Enjoyed our discussion as well. I will see Cathy tomorrow to speak with her, but here's what we would like to do as next steps after executing a NDA [non-disclosure agreement]:
1. Conference Call.... The major agenda item for me would be to hear Mary Anne (and you as well) discuss thoughts about how DSA would strategically and operationally fit into the [United Drug] Alliance family. There is no "wrong" answer here. I am simply looking to see how Mary Anne thinks about acquisitions and operational integration which would include all thoughts about operating DSA as a standalone brand entity or simply merging its operations into the Alliance brand....
....
4. Delivery of Expression of Interest. Assuming the meeting in Durham does not derail interest levels, then we would ask that U-D/Alliance provide a written, nonbinding expression of interest to DSA....
From there, we can determine if there is good reason to consider moving forward with confirmatory diligence.
I will also reiterate that DSA is not necessarily for sale, but it is interested in examining unique strategic opportunities. I plan to recommend to Cathy that U-D/Alliance, *549 based on a productive first discussion, appears to meet this test.
Let me know any additional thoughts you may have as I will be meeting with Cathy tomorrow afternoon.
Regards,
Doug
*775 Plaintiff also directed this Court to Strange's affidavit, where Strange states that when he was retained by plaintiff in May 2011 to perform a valuation of defendant's ownership interest in DSA, Strange sent defendant a list of "Documents Requested for a Business Valuation," including "requests for copies of any buy-sell agreements and/or written offers to purchase or sell company stock," which defendant never produced nor later supplemented. Strange testified that when he interviewed defendant on 7 December 2011, he specifically asked defendant whether she had received any written or oral offers to purchase DSA over the past five years, and she responded that she had not. Strange stated that he asked defendant to describe any plans to sell all or part of DSA, and defendant replied that she had no such plans.
Plaintiff further directed this Court to defendant's testimony from depositions taken on 17 and 20 January 2012, which provided in pertinent part:
Q. Have you discussed selling your business with anyone at any time?
A. Yes.
Q. Tell us about who that was with and the context of the conversation or offer or whatever it might be.
....
A. There was no offer. We've had conversations throughout the course of DSA's existence as far as capital, structure, if it's buy-sell, if it's a merger opportunity, if it's a partnership opportunity. Whatever I can do best for the sake of the company is what I explore.
Q. Tell me about all of those.
A. The specifics of all of those?
Q. Yes, ma'am.
A. We have folks that send me emails every other day that I have no idea who they are or what they're all about, about opportunities to invest or to acquire or to partner, strategic alliances. I get those constantly and have been since we started.
Q. Do you have those records?
A. Most likely they'd be in my email.
*776 Q. Let's go back to the issue of selling. Has anyone ever made an offer to buy your business?
A. No.
....
Q. Doug Townsend. Have you discussed with him the subject of selling your business?
A. Yes. I've discussed lots of topics with Doug.
Q. And have you discussed any particular numbers that might be appropriate by which or for which you would sell your shares?
A. No.
Q. You've never discussed that?
A. No.
It is undisputed that plaintiff's Motion to Vacate Arbitration Award and Set Aside Order is currently pending in district court. Indeed, the majority's decision to dismiss this appeal as interlocutory necessarily passes on this question and answers it in the affirmative. However, the majority states that plaintiff's motion to vacate is merely a "motion" and not an "action." Although it is clearly a motion, its filing constituted an action. See, e.g., Cortez Byrd Chips, Inc. v. Bill Harbert Constr. Co., 529 U.S. 193, 203, 120 S.Ct. 1331, 146 L.Ed.2d 171 (2000) (labeling "motions to confirm, vacate, or modify [arbitration awards]" as "actions"); see also Black's Law Dictionary 83 (8th ed. 2004) ("An action has been defined to be an ordinary proceeding in a court of justice, by which one party prosecutes another party for the enforcement or protection of a right, the redress or prevention of a wrong [.]" ... "More accurately, it is ... any judicial proceeding, which, if conducted to a determination, will result in a judgment or decree....").
The filing of this motion initiated an action, which is subject to the North Carolina Rules *550 of Civil Procedure. Rule 26 provides that "[p]arties may obtain discovery regarding any matter ... relevant to the subject matter involved in the pending action[.]" N.C. Gen.Stat. § 1A-1, Rule 26(b)(1). Discovery is necessary for plaintiff to carry his evidentiary burden to demonstrate grounds to vacate the arbitration award. "[T]he party seeking to vacate [an arbitration award] must shoulder the burden of proving the grounds for attacking its validity[,]" Pinnacle Grp., 105 N.C.App. at 171, 412 S.E.2d at 120 (citation omitted), and "[o]nly clear evidence will justify vacating an award." Id. *777 The information that plaintiff seeks pertains to the timing and circumstances of defendant's sale of her interest in DSA to United Drug. The interrogatories that plaintiff requested provided, in pertinent part:
3. Identify the date on which Defendant or anyone affiliated with DSA (including any third parties acting on behalf of DSA) first had any contact with United about a potential merger with, or purchase or acquisition of DSA by United or any of its affiliates. Identify all individuals who were involved in such contact and describe the method of such contact (whether email, phone, letter, or otherwise).
....
4. Identify the date on which United first presented DSA or Defendant with any Non-Disclosure Agreement ("NDA") or equivalent document regarding a potential merger with, or purchase or acquisition of DSA by United or any of its affiliates, and identify the date such NDA or equivalent document was signed by either party.
....
5. Identify the date on which United first presented DSA or Defendant with any Term Sheet or equivalent document, in draft form or otherwise, regarding a potential merger with, or purchase or acquisition of DSA by United or any of its affiliates.
....
6. Identify the date or dates on which United or any of its affiliates presented DSA or Defendant with any offer or proposal to purchase, acquire, or merge with DSA. Conversely, identify the date or dates on which DSA or Defendant presented United or any of its affiliates with any offer to be sold to, acquired by, or merged with United or any of its affiliates.
....
16. Identify the date on which you first discussed a potential merger with, or purchase or acquisition of DSA by United with any person or persons affiliated with DSA, including employees, and identify any such person or persons with whom you discussed the potential merger, purchase, or acquisition.
*778 ....
17. Identify the date on which DSA or Defendant first discussed a potential merger with, or purchase or acquisition of DSA by United with attorney Robert Ponton....
....
18. Identify the date on which DSA or Defendant first discussed a potential merger with, or purchase or acquisition of DSA by United with attorney Theron "Tad" vanDusen....
....
19. Identify the date on which DSA or Defendant first discussed a potential merger with, or purchase or acquisition of DSA by United with Robert McKenzie.
....
20. Identify the date on which DSA or United first commenced any due diligence activity, including requesting or providing documents and information, with respect to a merger with, or purchase or acquisition of DSA by United.
....
22. Identify the date of the first in-person meeting between DSA and Untied during which the parties discussed a potential merger with, or purchase or acquisition of DSA by United....
Plaintiff also requested the production of documents pertaining to information relating to the sale of DSA to United and filed requests for admission with defendant. Subsequently, plaintiff filed motions to compel responses to plaintiff's first set of interrogatories, responses to plaintiff's request for *551 production of documents, and responses to plaintiff's requests for admission with defendant. In his Motion to Vacate Arbitration Award and Set Aside Order and Motion to Engage in Discovery, plaintiff requested from the trial court an order allowing the parties to engage in this "limited discovery."
It is well settled that
parties to an arbitration will not generally be heard to impeach the regularity or fairness of the award. Exceptions *779 are limited to such situations as those involving fraud, misconduct, bias, exceeding of powers and clear illegality.
Carolina-Virginia Fashion Exhibitors v. Gunter, 41 N.C.App. 407, 410-11, 255 S.E.2d 414, 417 (1979) (internal citations omitted). "Judicial review of an arbitration award is confined to determination of whether there exists one of the specific grounds for vacation of an award under the arbitration statute." Semon v. Semon, 161 N.C.App. 137, 141, 587 S.E.2d 460, 463 (2003) (brackets omitted) (quoting Fashion Exhibitors, 41 N.C.App. at 410-11, 255 S.E.2d at 418 ).
As plaintiff explained in his Motion to Vacate Arbitration Award and Set Aside Order and Motion to Engage in Discovery:
A multi-million dollar corporate acquisition, particularly one involving a foreign company like Untied [sic] Drug, is a complex, multilayered process that can take months or even years to complete. It is highly unlikely, if not impossible, for DSA to have initiated negotiations with United Drug, arrived at mutually agreeable terms, performed sufficient due diligence, and executed a Letter of Intent in the span of about six (6) weeks. More likely, Defendant intentionally concealed the discussions and negotiations between DSA and United Drug during discovery and arbitration in an attempt to keep the apparent value of her ownership interest artificially low and convince Plaintiff to agree to an unfair settlement, thereby reaping a financial windfall by selling her ownership interest to United Drug months later. What is clear is that at the time of settlement, Plaintiff had been improperly led to believe, based on Defendant's failure to properly disclose material information, that Defendant had no intention or plans to sell her ownership interest in DSA, and Plaintiff decided to settle arbitration in reliance on that belief.
Until this Court decides whether plaintiff is permitted to engage in the limited discovery he requests, plaintiff will not be able to establish the grounds that the "award was procured by corruption, fraud or other undue means" to support vacating the award. N.C. Gen.Stat. § 50-54(a)(1).
V. Conclusion
Whether the evidence that plaintiff seeks would be favorable or unfavorable to his position is speculative. However, plaintiff has demonstrated the substantial right contemplated by Tennessee-Carolina *780 Transportation and Dworsky sufficient to justify immediate review. Plaintiff has identified, and the record discloses, "relevant and material information" that is "highly material" to the "critical question to be resolved" in his pending action: whether defendant concealed or otherwise failed to disclose the potential sale of DSA to United Drug during the parties' equitable distribution proceedings, thereby significantly diminishing the valuation of defendant's business. Furthermore, because the trial court denied plaintiff's Motion to Engage in Discovery and concluded that "[t]here is no pending action between Plaintiff and Defendant in which discovery may be propounded[,]" plaintiff has been "effectively precluded" from introducing additional evidence in his pending motion to vacate and set aside. However, plaintiff has presented an "objective basis ... for a reasonable belief" of misconduct sufficient to justify the limited post-award discovery he now seeks. Because the discovery sought is limited to information related to the communications, negotiations, and agreements to sell DSA to United Drug, plaintiff's focused investigation is not a "fishing exhibition." Unless this Court reverses the trial court to allow discovery, plaintiff will be unable to introduce the "clear evidence [,]" required to prove the grounds that the " award was procured by corruption, fraud or other undue means" sufficient to vacate. N.C. Gen.Stat. § 50-54(a)(1). *552 For these reasons, I conclude plaintiff has a right to appeal the trial court's discovery order. In the alterative, I believe this Court should grant plaintiff's petition for writ of certiorari to address his appeal on the merits. The trial court abused its discretion by denying plaintiff's limited discovery request, and there is no just reason to delay plaintiff's appeal. The trial court's order should be reversed, and the case should be remanded.

Plaintiff indicates the exact ownership of defendant's shares at the time of sale was unknown but might have ranged between 67% to 86%.