IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA24-711

Filed 3 December 2025

Surry County, No. 22CVS000233-850

W. NOAH REYNOLDS, Plaintiff,

v.

DEVOTION FAMILY, LLC and BROOK E. REYNOLDS, Defendants.

Appeal by Defendant Brook E. Reynolds from order entered 1 March 2024 by Judge Angela B. Puckett in Surry County Superior Court. Heard in the Court of Appeals 26 February 2025.

*Robinson & Lawing, LLP, by Attorneys H. Brent Helms and Jeremy Demmitt, for the plaintiff-appellee.*

*Ferikes Bleynat & Cannon, PLLC, by Attorney Edward L. Bleynat, Jr., for the defendant-appellant Brook E. Reynolds.*

STADING, Judge.

Brook E. Reynolds ("Defendant") appeals from the trial court's order granting W. Noah Reynolds's ("Plaintiff") motion to confirm several interim arbitration awards. On appeal, Defendant asserts the trial court erred by confirming the interim awards and erred by denying her motion to vacate or modify. In turn, Plaintiff moved to dismiss Defendant's appeal pursuant to N.C. R. App. P. 37(a), asserting the order appealed from is interlocutory and does not affect a substantial right. After careful

review, we hold this Court possesses the requisite jurisdiction to consider Defendant's appeal. *See* N.C. Gen. Stat. §§ 7A-27(b)(4), 1-569.28(a)(3) (2023). Turning to the merits, the trial court erred by denying Defendant's motion to modify since the Arbitrator exceeded his scope of authority by requiring the parties to resolve all future disputes by way of arbitration. Otherwise, the Arbitrator's actions were proper.

## I. Factual and Procedural Background

This appeal arises from arbitration between Plaintiff and Defendant over a dispute involving Devotion Family, LLC ("Devotion"), a family-owned limited liability company formed in 2008. The record tends to reflect that Devotion owns approximately 4,135.09 acres of real property across Surry and Alleghany Counties, including buildings, improvements, furniture, vehicles, farm equipment, and tools. At the time of Devotion's formation, William Neal Reynolds, II—the father of Plaintiff and Defendant—was the sole owner.

Following Mr. Reynolds' death in February 2009, Plaintiff and Defendant each obtained a 36.30% ownership interest in Devotion, while their mother, Sandra Reid Reynolds, retained a 27.40% interest. Mrs. Reynolds later transferred her remaining ownership interest in Devotion to Plaintiff and Defendant equally. Following this transfer, Plaintiff and Defendant each possessed a 50% ownership interest in Devotion, maintaining six of the twelve voting shares respectively.

On 23 September 2019, Devotion dissolved, ceasing its existence as a legal entity. Following dissolution, Plaintiff and Defendant were unable to agree on "the winding up of Devotion and the distribution of Devotion's assets." As a result, Plaintiff filed a claim and demand for arbitration with the American Arbitration Association ("AAA") pursuant to Section 12.6 of Devotion's Amended Operating Agreement (the "Operating Agreement")—the dispute resolution clause—and concurrently filed a complaint against both Defendant and Devotion in the trial court, asserting the following alternative claims for relief:

> **SECOND CLAIM FOR RELIEF (ALTERNATIVE) APPOINTMENT OF A RECEIVER FOR WINDING UP DEVOTION (N.C. GEN. STAT. § 57-D-6-07)**
>
> . . . .
>
> 31. To the extent the matter is not resolved under the arbitration award, the Court should enter an Order appointing a receiver to wind up Devotion and distribute its assets in kind as contemplated by the Operating Agreement.
>
> **THIRD CLAIM FOR RELIEF (ALTERNATIVE) PARTITION OF REAL PROPERTY (N.C. GEN. STAT. § 46A-21)**
>
> . . . .
>
> 34. If the distribution of the Property is not completely settled by the arbitrator, then [Plaintiff] would request that the Court take appropriate measures to partition the Property in kind in the manner identified on Exhibit 2 with the prior and existing easements to ensure adequate road access and that owners have the ability to traverse their respective property tracts in a convenient manner as has been the case during Devotion's ownership of the Property

. . . .

> 35. [Plaintiff] would further request that the Court distribute tract C-1 to [Plaintiff] and tract C-2 to [Defendant] as identified on Exhibit 2, with any necessary owelty affixed, and further partition by sale the portions of the Property identified as Tracts A and B with either [Plaintiff] or [Defendant] being allowed to purchase either tract from the other through any private sale or listing through a public auction as determined by the Court.

Plaintiff simultaneously moved to compel arbitration and stay litigation. *See* N.C. Gen. Stat. § 1-569.7 (2023).

The parties later entered a consent order, compelling arbitration and staying "litigation pending the completion of the arbitration proceedings before the AAA." After reviewing the relevant materials, the Arbitrator entered three interim arbitration awards;[1] however, only the second and third awards[2] are at issue in the matter *sub judice*.

The second award partitioned Devotion's property into four tracts, awarding Tracts A and C-1 to Plaintiff, awarding Tract C-2 to Defendant, and designating Tract

---

[1] *Compare* ARBITRATION AWARD, Black's Law Dictionary (12th ed. 2024) ("A final decision by an arbitrator or panel of arbitrators; specif., a written decision by an arbitral tribunal setting forth the final and binding determination of the merits of a claim, defense, or issue, whether or not the decision resolves the entire dispute. An arbitration award may consist merely of a grant of interim relief."), *with* INTERIM AWARD, Black's Law Dictionary (12th ed. 2024) (noting that an interim award is an "arbitral panel's decisions on the applicable law and its jurisdiction made before the panel decides the issues in an arbitration. – Also termed *partial award; preliminary award*."), *and with* PARTIAL AWARD, Black's Law Dictionary (12th ed. 2024) ("An arbitral award that disposes of some but not all of the claims, defenses, or issues to be decided.").

[2] The Arbitrator entered the second and third interim arbitration awards on 11 December 2023.

B for sale.[3]  The second award also required the parties to enter a Declaration of Easements, Covenants, and Restrictions ("DECR"), establishing obligations related to road maintenance, reservoir restoration, easement negotiation, and mandatory arbitration of future disputes.  Finally, the second award concluded that "[s]ubsequent orders may be entered to finalize the winding up of Devotion and to complete this arbitration proceeding including a Third Interim Order dealing with [Defendant's] Objections to the DECR."

The third award addressed several objections raised by Defendant regarding the DECR.  Defendant contested, inter alia, that the DECR distributed "rights unfairly, burdening [her] property and benefiting [Plaintiff's] property[.]"  She also asserted that "given the transactions and occurrences between the [Plaintiff and Defendant] over the course of this arbitration it is unfair to expect future cooperation to achieve resolution of business ventures such as hunting and fishing rights, road maintenance and use of the water reservoir."  After consideration, the Arbitrator overruled Defendant's objections in the third interim award.

On 19 December 2023, Plaintiff moved the trial court to confirm the second and third interim awards.  In response, Defendant moved the trial court to vacate or

---

[3] We note a minor discrepancy in the record.  The second interim award states: "Devotion . . . will execute deeds to transfer tract A and C-1 to [Plaintiff.]"  On the other hand, the trial court's order states: "The second interim award . . . distributes tracts C-1 and C-2 to the parties; requires tracts A and B to be sold[.]"  Thus, it is unclear whether Tract A was awarded to Plaintiff in the second interim award or was designated for sale.  In any event, neither party raises the issue, and the distinction is immaterial to our analysis.

modify both awards. After considering the parties' arguments, the trial court granted

Plaintiff's motion to confirm the second and third awards. The trial court denied

Defendant's motion to vacate or modify, reasoning:

> 10. Defendant . . . contends that both the Second Interim Arbitration Award and the Third Interim Arbitration Award should be vacated in whole or in part or modified because the Arbitrator exceeded his authority, in various ways, in violation of N.C. Gen. Stat. § 1-569.23(a)(4).
>
> 11. . . . the Court finds and concludes that the Arbitrator did not exceed his authority in any of the manners contended by Defendant . . . . Rather, the issues that the Arbitrator addressed and ruled upon in both . . . [awards] were either jointly submitted by the parties or were otherwise within the Arbitrator's scope of authority.
>
> 12. As the Arbitrator did not exceed his authority, there are no grounds to vacate or modify either the Second Interim Arbitration Award or the Third Interim Arbitration Award, and Defendant['s] . . . Motion is **DENIED.**

Defendant timely appealed from the trial court's order. Defendant also moved

the trial court to stay execution of the trial court's order pending resolution of her

appeal. N.C. Gen. Stat. §§ 1A-1, Rule 62(d) and 1-291 (2023). The parties later

entered a consent order, granting Defendant's motion to stay.

## II. Jurisdiction

As a preliminary matter, we must address whether this Court has jurisdiction

to consider Defendant's appeal from an interlocutory order. Defendant argues that

she has a statutory right to immediate appeal under N.C. Gen. Stat. §§ 7A-27(b)(4)

and 1-569.28(a)(3) because she appealed from an order confirming an arbitration

award. Alternatively, Defendant maintains this Court has jurisdiction to consider her appeal pursuant to N.C. Gen. Stat. § 7A-27(b)(3)(a) (2023), as it concerns an appeal from an interlocutory order that affects a substantial right. In response, Plaintiff moved this Court to dismiss Defendant's appeal, asserting she does not have a statutory right to appeal and failed to demonstrate the implication of a substantial right. *See* N.C. R. App. P. 37 ("Motions in Appellate Courts").

"An interlocutory order is one made during the pendency of an action, which does not dispose of the case, but leaves it for further action by the trial court in order to settle and determine the entire controversy." *Hanesbrands Inc. v. Fowler*, 369 N.C. 216, 218, 794 S.E.2d 497, 499 (2016) (quoting *Veazey v. City of Durham*, 231 N.C. 357, 362, 57 S.E.2d 377, 381 (1950)). Generally, interlocutory orders are not immediately appealable. *Turner v. Hammocks Beach Corp.*, 363 N.C. 555, 558, 681 S.E.2d 770, 773 (2009). "The purpose of this rule is 'to prevent fragmentary and premature appeals that unnecessarily delay the administration of justice and to ensure that the trial divisions fully and finally dispose of the case before an appeal can be heard.'" *Sharpe v. Worland*, 351 N.C. 159, 161, 522 S.E.2d 577, 578–79 (1999) (citation omitted).

Defendant asserts that a plain reading of N.C. Gen. Stat. § 1-569.28(a)(1)–(6) allows for appeals from both interlocutory orders and final judgments since the statute uses the disjunctive conjunction "or," and subsection (a)(6) enumerates a separate category for appeals from final judgments. Absent such a construction,

Defendant maintains that subsection 1-569.28(a)(6) would be rendered meaningless. We agree.

We begin with a pertinent observation—whether Defendant maintains a direct right to appeal an interlocutory order under N.C. Gen. Stat. §§ 7A-27(b)(4) and 1-569.28(a)(3) is a question that has not been directly resolved by our jurisprudence. *Cf. Ruffin Woody & Assocs., Inc. v. Person Cnty.*, 92 N.C. App. 129, 132, 374 S.E.2d 165, 167 (1988) (noting that "the specific instances in which an appeal may be taken from an arbitration order are set out in G.S. 1-567.18, and the statute does not permit an appeal to be taken from the denial of an application to stay arbitration"); *Laws v. Horizon Hous., Inc.*, 137 N.C. App. 770, 771, 529 S.E.2d 695, 696 (2000) (citation omitted) (holding that G.S. 1-567.18 "does not provide for an immediate appeal from an order compelling arbitration, and . . . 'that there is no immediate right of appeal from an order compelling arbitration'"); *Bullard v. Tall House Bldg. Co.*, 196 N.C. App. 627, 676 S.E.2d 96 (2009), abrogated in part by *Stokes v. Crumpton*, 369 N.C. 713, 719, 800 S.E.2d 41, 45 (2017) (holding that "an appeal can be justified under section 7A-27 even if there is no right to appeal under the relevant arbitration statute," and "[t]o the extent *Bullard* suggests otherwise, it is abrogated"); *Bluffs, Inc.*

*v. Wysocki*, 68 N.C. App. 284, 285, 314 S.E.2d 291, 293 (1984) (noting that "there is

no right of appeal from an order compelling arbitration" under G.S. 1-567.18).[4]

That said, when determining whether a court possesses jurisdiction to consider

an appeal from an arbitration order or award, our analysis begins with assessing

whether the appellant possesses a statutory right of appeal under the relevant

arbitration statute; if unavailable, we then conduct a substantial rights analysis

under N.C. Gen. Stat. § 7A-27:

> In *Bluffs, Inc. v. Wysocki*, 68 N.C. App. 284, 314 S.E.2d 291 (1984), the threshold issue before the court was whether there is an immediate right to appeal an order compelling arbitration under the Uniform Arbitration Act (UAA), which the court held did not exist. The court began its analysis by reviewing the bases for appeal enumerated in N.C.G.S. § 1-567.18(a) and concluding that an order compelling arbitration does not fall under the statute. After reaching this conclusion, the court then addressed whether the order affected a substantial right. Ultimately, the court held that an order compelling arbitration is not appealable under either the UAA or section 7A-27.
>
> Subsequent Court of Appeals cases relying on *Wysocki* have followed a similar analytical framework—conducting a substantial rights analysis under section 7A-27 *after* concluding that the order at issue did not fall under the enumerated bases for appeal set out in the relevant arbitration statute. *See, e.g.*, *Smith v. Shipman*, 153 N.C. App. 200, 569 S.E.2d 34, 2002 N.C. App. LEXIS 2342, 2002 WL 31055991 (2002) (unpublished); *N.C. Elec. Membership*

---

[4] N.C. Gen. Stat. § 1-567.18 is the predecessor of N.C. Gen. Stat. § 1-569.28 with respect to the statutory right to appeal from arbitration orders or awards. *See Laws*, 137 N.C. App. at 771, 529 S.E.2d at 696 (providing the six enumerated grounds on which an appeal may be taken from an arbitration order or award under G.S. 1-567.18). The language contained in the former version of the statute is nearly identical to the statute's current form. *Compare id., with* N.C. Gen. Stat. § 1-569.28(a)(1)–(6).

> *Corp. v. Duke Power Co.*, 95 N.C. App. 123, 381 S.E.2d 896,
> *disc. rev. denied*, 325 N.C. 709, 388 S.E.2d 461 (1989).
> *Wysocki* and its progeny do not explicitly address the
> relationship between appeals under an arbitration statute
> and interlocutory appeals under section 7A-27. Implicit in
> these cases, however, is support for the conclusion that a
> right to appeal can be based on section 7A-27 even if there
> is no right to appeal under the arbitration statute.

*Stokes v. Crumpton*, 369 N.C. 713, 717–18, 800 S.E.2d 41, 44–45 (2017) (citations omitted). We therefore consider whether Defendant possesses a direct right to appeal pursuant to the Revised Uniform Arbitration Act ("RUAA"). *See* N.C. Gen. Stat. 1-569.1 et seq. (2023).

"In construing . . . statutory language, we are guided by long-standing rules of statutory interpretation. . . . [I]f a statute is clear and unambiguous, no construction of the legislative intent is required[,] and the words are applied in their normal and usual meaning." *Misenheimer v. Burris*, 360 N.C. 620, 623, 637 S.E.2d 173, 175 (2006); *Belmont Ass'n v. Farwig*, 381 N.C. 306, 310, 873 S.E.2d 486, 489 (2022) (quoting *Correll v. Div. of Soc. Servs.,* 332 N.C. 141, 144, 418 S.E.2d 232, 235 (1992)) ("Statutory interpretation properly begins with an examination of the plain words of the statute."). But "if the plain reading of a statute leads to a result so absurd that no reasonable legislator could have intended it, we can ignore that absurd interpretation and find a reasonable one." *C Invs. 2, LLC v. Auger*, 277 N.C. App. 420, 430, 860 S.E.2d 295, 302 (2021).

Our Courts have previously determined that "the disjunctive [conjunction] 'or' is used to indicate a clear alternative. The second alternative is not a part of the first, and its provisions cannot be read into the first." *Aman v. Nicholson*, 288 N.C. App. 1, 11, 885 S.E.2d 100, 108 (2023) (quoting *In re Duckett's Claim*, 271 N.C. 430, 437, 156 S.E.2d 838, 844 (1967)) (brackets in original). Additionally, "it is a fundamental principle of statutory interpretation that courts should 'evaluate [a] statute as a whole and . . . not construe an individual section in a manner that renders another provision of the same statute meaningless." *Lunsford v. Mills*, 367 N.C. 618, 628, 766 S.E.2d 297, 304 (2014) (alterations in original) (citation omitted).

The RUAA is codified under Chapter 1, Article 45C of the North Carolina General Statutes. *See* N.C. Gen. Stat. § 1-569.1 et seq. Relevant here, subsection 1-569.28(a)(1)–(6) of the RUAA enumerates the circumstances where an arbitration order or award may be directly appealed:

> (a) An appeal may be taken from:
>
> (1) An order denying a motion to compel arbitration;
>
> (2) An order granting a motion to stay arbitration;
>
> (3) *An order confirming or denying confirmation of an award*;
>
> (4) An order modifying or correcting an award;
>
> (5) An order vacating an award without directing a rehearing; *or*
>
> (6) A final judgment entered pursuant to this Article.

> (b) An appeal under this section shall be taken as from an order or a judgment in a civil action.

(emphasis added). The RUAA expressly provides a right to appeal from "an order confirming . . . an award[.]" *Id.* § 1-569.28(a)(3). Separated by the disjunctive conjunction "or," the statute further provides a right to appeal from a "final judgment" entered pursuant to the RUAA. *Id.* § 1-569.28(a)(6).

Read in pari materia, N.C. Gen. Stat. § 7A-27(b)(4) allows a party to directly appeal to the North Carolina Court of Appeals from "any other order or judgment of the superior court from which an appeal is authorized by statute." Unlike subsections 7A-27(b)(1) and (2), subsection 7A-27(b)(4) does not require that the order or judgment being appealed be a "final judgment."[5] *Compare id.* § 7A-27(b)(1), (2), *with id.* § 7A-27(b)(4). And unlike subsection 7A-27(b)(3)—which is expressly limited to interlocutory orders and judgments—subsection 7A-27(b)(4) allows for an appeal "[f]rom *any other* order or judgment." *Compare id.* § 7A-27(b)(3), *with id.* § 7A-27(b)(4) (emphasis added).

In the instant case, a plain reading of N.C. Gen. Stat. § 1-569.28(a)(3) grants Defendant a right to appeal from the trial court's interlocutory order. *Misenheimer*, 360 N.C. at 623, 637 S.E.2d at 175. That is, notwithstanding its interlocutory nature, Defendant appealed from the trial court's civil order that confirmed the second and

---

[5] "A final judgment is one which disposes of the cause as to all the parties, leaving nothing to be judicially determined between them in the trial court." *Atkins v. Beasley*, 53 N.C. App. 33, 36, 279 S.E.2d 866, 869 (1981) (citation omitted).

third interim arbitration awards. *Cf. Stokes*, 369 N.C. at 717–18, 800 S.E.2d at 44–45. A plain reading of the statute shows the use of the disjunctive conjunction "or," which indicates that no individual provision possesses a bearing on the other. *Aman*, 288 N.C. App. at 11, 885 S.E.2d at 108 (citation omitted); *see also* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 116 (2012) ("Under the conjunctive/disjunctive canon, *and* combines items while *or* creates alternatives."). For that reason, the statute expressly provides that an appeal from a "final judgment entered pursuant to this Article" is a clear alternative to an appeal from an order confirming an arbitration award. *Compare* N.C. Gen. Stat. § 1-569.28(a)(6), *with id.* § 1-569.28(a)(3). Moreover, the enabling statute—N.C. Gen. Stat. § 7A-27(b)(4)—possesses no express requirement that the order or judgment being appealed from be a final order or judgment.

We recognize our common law's longstanding mandate, that generally, interlocutory orders are not immediately appealable. *Turner*, 363 N.C. at 558, 681 S.E.2d at 773. However, interpreting N.C. Gen. Stat. § 1-569.28 in any other manner would render its individual provisions meaningless—in particular, subsection 1-569.28(a)(6)—and contravene a plain reading of the statute. *Lunsford*, 367 N.C. at 628, 766 S.E.2d at 304; *Auger*, 277 N.C. App. at 426, 860 S.E.2d at 300 ("The intent of the General Assembly may be found first from the plain language of the statute, then from the legislative history, the spirit of the act and what the act seeks to accomplish."). Moreover, our Supreme Court in *Stokes* contemplated the scenario

whereby an appellant could possess a direct right to appeal an interlocutory order under a corresponding arbitration statute. 369 N.C. at 718–19, 800 S.E.2d at 45. For all these reasons, we hold that Defendant's appeal is properly before this Court and deny Plaintiff's motion to dismiss.

## III. Analysis

Defendant argues the trial court erred by granting Plaintiff's motion to confirm the second and third interim arbitration awards because "an arbitrator's authority is specifically limited to what the agreement to arbitrate allows." Defendant maintains the Arbitrator exceeded his scope of authority by imposing the following provisions in the DECR: (1) requiring Defendant to financially contribute to the rehabilitation of a shared water reservoir on Tract C-2; (2) requiring the parties to submit to a traffic count mechanism to allocate maintenance costs; (3) requiring the parties to negotiate a utilities easement; and (4) requiring the parties to resolve all future disputes under the DECR pursuant to arbitration with the AAA. As such, Defendant contends the trial court should have granted her motion to vacate or modify the interim awards. *See* N.C. Gen. Stat. §§ 1-569.23 and 1-569.24 (2023).

After careful consideration, we disagree with Defendant's first three arguments: The arbitration clause contained in the Operating Agreement does not preclude the actions complained about, and the parties submitted those issues and requests for relief to the Arbitrator. *See Faison & Gillespie v. Lorant*, 187 N.C. App. 567, 578, 654 S.E.2d 47, 54 (2007). Defendant also fails to establish how any of the

remedies provided contravene North Carolina law and how the arbitration clause unequivocally precludes them. *See R.E.M. Constr. v. Cleveland Constr., Inc.*, 285 N.C. App. 167, 173, 876 S.E.2d 851, 855 (2022) (citation omitted). Notwithstanding, the Arbitrator exceeded his authority by mandating future arbitration under the DECR. The trial court therefore erred by denying Defendant's motion to modify the interim awards on this basis under N.C. Gen. Stat. § 1-569.24(a)(2).

"When reviewing a trial court's decision to confirm or vacate an arbitration award, 'we accept findings of fact that are not clearly erroneous and review conclusions of law *de novo.*'" *Flynn v. Schamens*, 250 N.C. App. 337, 338, 792 S.E.2d 833, 835 (2016) (quoting *Carpenter v. Brooks*, 139 N.C. App. 745, 750, 534 S.E.2d 641, 645 (2000)) (citation omitted); *First Union Secs., Inc. v. Lorelli*, 168 N.C. App. 398, 400, 607 S.E.2d 674, 676 (2005). "Under a *de novo* review, the court considers the matter anew and freely substitutes its own judgment for that of the lower tribunal." *Lynn v. Fannie Mae*, 235 N.C. App. 77, 81, 760 S.E.2d 372, 375 (2014) (citation omitted).

"After a party to an arbitration receives notice of an award, the party may make a motion to the court for an order confirming the award" under the RUAA. N.C. Gen. Stat. § 1-569.22 (2023). When such a motion is made, "the court shall issue a confirming order *unless* the award is *modified or corrected* pursuant to G.S. 1-569.20 or G.S. 1-569.24 or is *vacated* pursuant to G.S. 1-569.23." *Id.* (emphasis added); *FCR Greensboro v. C & M Invs.*, 119 N.C. App. 575, 577, 459 S.E.2d 292, 294 (1995)

("Generally, parties who have agreed to abide by an arbitrator's decision will not be heard to attack the regularity or fairness of an award, . . . and the trial court must confirm the award unless grounds exist to either vacate or modify the award.").[6]

Relevant here, an award "shall" be vacated if "[a]n arbitrator exceeded the arbitrator's powers[.]" N.C. Gen. Stat. § 1-569.23(a)(4). On the other hand, an award "shall" be modified if:

> (1) There was an evident mathematical miscalculation or an evident mistake in the description of a person, thing, or property referred to in the award;
>
> (2) The arbitrator has made an award on a claim not submitted to the arbitrator, and the award may be corrected without affecting the merits of the decision on the claims submitted; or
>
> (3) The award is imperfect in a matter of form not affecting

---

[6] Our Courts have demonstrated a longstanding policy of upholding arbitral awards and resolving doubts as to the scope of arbitrable issues in favor of arbitration. *See Carolina Virginia Fashion Exhibitors, Inc. v. Gunter*, 41 N.C. App. 407, 415, 255 S.E.2d 414, 420 (1979) (first quoting *T.W. Poe & Sons, Inc. v. Univ. of N.C.*, 248 N.C. 617, 625, 104 S.E. 2d 189, 195 (1958)) (then quoting *Patton v. Garrett*, 116 N.C. 847, 858, 21 S.E. 679, 682 (1895)) ("If an arbitrator makes a mistake, either as to law or fact, it is the misfortune of the party, and there is no help for it. There is no right of appeal and the Court has no power to revise the decisions of "'judges who are of the parties' own choosing.'" An award is intended to settle the matter in controversy, and thus save the expense of litigation. If a mistake be a sufficient ground for setting aside an award, it opens a door for coming into court in almost every case; for in nine cases out of ten some mistake either of law or fact may be suggested by the dissatisfied party. Thus . . . arbitration, instead of ending would tend to increase litigation."); *see also R.E.M. Constr. v. Cleveland Constr., Inc.*, 285 N.C. App. at 172, 876 S.E.2d at 854 (quoting *W.M.S., Inc. v. Weaver*, 166 N.C. App. 352, 357, 602 S.E.2d 706, 709 (2004)) ("Since this appeal arises from a decision on a motion to confirm an arbitration award, we first note that a strong policy supports upholding arbitration awards."); *see also Servomation Corp. v. Hickory Constr. Co.*, 316 N.C. 543, 544, 342 S.E.2d 853, 854 (1986) ("There is a strong public policy favoring the settlement of disputes by arbitration, and doubts concerning the scope of arbitrable issues will be resolved in favor of the party seeking arbitration."); *see also Epic Games, Inc. v. Murphy-Johnson*, 247 N.C. App. 54, 62, 785 S.E.2d 137, 143 (2016) (quoting *Johnston Cty. v. R.N. Rouse & Co.*, 331 N.C. 88, 91, 414 S.E.2d 30, 32 (1992)) ("[O]ur strong public policy requires that the courts resolve any doubts concerning the scope of arbitrable issues in favor of arbitration.").

the merits of the decision on the claims submitted.

N.C. Gen. Stat. 1-569.24(a)(1)–(3) (2023); *FCR Greensboro*, 119 N.C. App. at 577, 459 S.E.2d at 294 (citation omitted) (noting that only "awards reflecting mathematical errors, errors relating to form, and errors resulting from arbitrators exceeding their authority shall be modified or corrected by the reviewing courts"); *Howell v. Wilson*, 136 N.C. App. 827, 830, 526 S.E.2d 194, 196 (2000) (providing that "an arbitrator exceeds his authority when he arbitrates *additional* claims and matters not properly before him"). That said, "[a]n award is ordinarily presumed to be valid, and the party seeking to set it aside has the burden of demonstrating an objective basis which supports his allegations that one of these grounds exists." *G. L. Wilson Bldg. Co. v. Thorneburg Hosiery Co.*, 85 N.C. App. 684, 686, 355 S.E.2d 815, 817 (1987).

With respect to an arbitrator exceeding his or her scope of authority, "[t]he duty to arbitrate is contractual, therefore, only disputes which the parties agreed to submit to arbitration may be resolved." *FCR Greensboro*, 119 N.C. App. at 577, 459 S.E.2d at 294. "To determine whether the parties agreed to submit a particular dispute or claim to arbitration, we must look at the language in the agreement, *viz.*, the arbitration clause, and ascertain whether the claims fall within its scope." *Rodgers Builders, Inc. v. McQueen*, 76 N.C. App. 16, 23–24, 331 S.E.2d 726, 731 (1985); *see also, e.g., Thomasville Chair Co. v. United Furniture Workers*, 233 N.C. 46, 49, 62 S.E.2d 535, 537 (1950) (noting that the "power and authority of the arbitrators here was limited by the terms of the agreement and the grievance submitted, and the

scope of the inquiry and decision must be determined in accord with that standard. The question is not whether the arbitrators decided wisely but whether they went beyond the limits established by the agreement between the Company and the Union."). "[W]hether a claim falls within the scope of an arbitration clause and is thus subject to arbitration depends not on the characterization of the claim as tort or contract, but on the relationship of the claim to the subject matter of the arbitration clause." *Rodgers Builders*, 76 N.C. App. at 24, 331 S.E.2d at 731.

The same logic applies to the remedies an arbitrator may fashion—an arbitrator possesses the latitude to grant any remedy he deems appropriate unless the arbitration clause specifically limits the types of relief he may grant:

> [A]bsent clearly restrictive language, an arbitrator must be allowed latitude in fashioning an appropriate remedy. By submitting to arbitration, it is implied that the arbitrator has the power to order an appropriate remedy, even though the contract may be silent as to any specific or general relief the arbitrator may grant. . . . If a contract specifically limits the authority of the arbitrator to grant a particular type of relief, then the remedies are confined to what is stated, but an arbitrator is allowed flexibility in formulating remedies . . . where the contract requiring arbitration was not explicit on the subject of remedies and *did not prohibit the arbitrator's use of a specific remedy.*

*Lorant*, 187 N.C. App. at 576, 654 S.E.2d at 53 (citation omitted). Indeed, "this Court has recognized with regard to the award of remedies that 'an arbitrator does not exceed his powers if (1) state law allows the remedy for the specified cause of action, and (2) the arbitration contract does not unequivocally preclude it[.]'" *R.E.M. Constr.*,

285 N.C. App. at 173, 876 S.E.2d at 855 (quoting *Weaver*, 166 N.C. App. at 359, 602 S.E.2d at 711). Rule 49 of the AAA similarly provides that an arbitrator may grant any remedy he deems just and equitable if the matter falls within the scope of the parties' arbitration agreement: "The arbitrator may grant any remedy or relief that the arbitrator deems just and equitable and within the scope of the agreement of the parties, including, but not limited to, specific performance of a contract." *Am. Arb. Ass'n*, Commercial Arbitration Rules & Mediation Procedures, R. 49(a) (2022).

### A. Water Reservoir, Traffic Count, & Utilities

Defendant asserts the Arbitrator exceeded his scope of authority by "imposing obligations on [her] to contribute as much as $60,000.00" to the rehabilitation of a water reservoir shared between Plaintiff and Defendant. Defendant maintains "nothing in the Operating Agreement or its arbitration clause allows such massive and comprehensive future obligations to be imposed on [her.]" Defendant further contends that the Arbitrator exceeded his scope of authority by requiring the parties "to submit to a traffic count mechanism to allocate maintenance costs," and by requiring the parties to negotiate the terms and conditions of a new utilities easement.

However, Defendant has failed to demonstrate how these claims or remedies are precluded by the arbitration clause contained in the Operating Agreement. *R.E.M. Constr.*, 285 N.C. App. at 173, 876 S.E.2d at 855 (providing that an arbitrator does not exceed his powers if "(1) state law allows the remedy for the specified cause

of action, and (2) the arbitration contract does not unequivocally preclude it"); *Rodgers Builders*, 76 N.C. App. at 23–24, 331 S.E.2d at 731 ("To determine whether the parties agreed to submit a particular dispute or claim to arbitration, we must look at the language in the agreement . . . , the arbitration clause, and ascertain whether the claims fall within its scope."); *Lorant*, 187 N.C. App. at 578, 654 S.E.2d at 54 ("An arbitrator's award cannot be modified for error of law unless that error caused the arbitrator to act beyond the scope of his authority. . . . [And] an award may not be vacated merely because the arbitrator erred as to law or fact.").

Here, the arbitration clause provides:

> Any dispute arising out of or in connection with this Agreement or the breach thereof shall be decided by arbitration to be conducted in North Carolina in accordance with the then prevailing Commercial Arbitration Rules of the American Arbitration Association, and judgment may be entered in any court having jurisdiction thereof. The prevailing party in arbitration shall receive immediate reimbursement from the non-prevailing party of the reasonable costs (including reasonable attorneys' fees) associated with the arbitration.

The arbitration clause thus provides a broad scope for the resolution of disputes, as it plainly states, "[a]ny dispute arising out of or in connection with" the Operating Agreement "shall be decided by arbitration[.]" *See Bass v. Pinnacle Custom Homes, Inc.*, 163 N.C. App. 171, 176, 592 S.E.2d 606, 609 (2004) (citation omitted) ("[P]arties can draft a contract provision which makes arbitration the method of resolving *any* controversy related to the contract. This Court has interpreted that to mean that

'there is no legislative bar to arbitration of these claims as long as they arise out of or relate to the contract.'"); *see also Rodgers Builders*, 76 N.C. App. at 25, 331 S.E.2d at 732 ("[T]he language of the arbitration clause here is sufficiently broad to include *any* claims which arise out of or are related to the contract or its breach, regardless of the characterization of the claims as tort or contract."); *see also Epic Games*, 247 N.C. App. at 63, 785 S.E.2d at 143 ("These broad phrases indicate the drafter, Epic Games, intended for an extensive range of issues relating to Johnson's employment or the Employment Agreement to fall within the arbitration clause's scope.").

Moreover, the arbitration clause grants the Arbitrator broad discretion in fashioning remedies since it is silent on the subject outside of incorporating the AAA's rules. *See, e.g., Lorant*, 187 N.C. App. at 576, 654 S.E.2d at 53 ("[A]n arbitrator is allowed flexibility in formulating remedies . . . where the contract requiring arbitration was not explicit on the subject of remedies and *did not prohibit the arbitrator's use of a specific remedy*."); *see also R.E.M. Constr.*, 285 N.C. App. at 173, 876 S.E.2d at 855–56 ("The Subcontracts do not explicitly preclude the equitable remedy that the panel fashioned; rather, they expressly vest the arbitration panel with broad discretion to craft equitable remedies through the specific adoption of the AAA Rules[.]").

Defendant overlooks the fact that the arbitration clause allows for the resolution of these claims and does not preclude the fashioning of these remedies. *Rodgers Builders*, 76 N.C. App. at 23–24, 331 S.E.2d at 731; *Lorant*, 187 N.C. App. at

576, 654 S.E.2d at 53. Additionally, the remedies fashioned are permitted by subsection 1-569.21(c) and Rule 49(a) of the AAA. *See R.E.M. Constr.*, 285 N.C. App. at 173, 876 S.E.2d at 855; *see also* N.C. Gen. Stat. § 1-569.21(c); *see also Am. Arb. Ass'n*, Commercial Arbitration Rules & Mediation Procedures, R. 49(a). And through their pleadings, Plaintiff and Defendant requested the Arbitrator to grant such relief as he deemed appropriate, which our Court previously determined allows an arbitrator to grant relief beyond what is expressly asked for in the prayer for relief sections of the parties' pleadings. *Lorant*, 187 N.C. App. at 575, 654 S.E.2d at 53 (citation omitted) ("A prayer for general equitable relief justifies a court in granting relief beyond what is asked for in specific prayers, as long as such relief is consistent with the pleadings and the evidence does not surprise the opposing party.").

Additionally, Defendant, through her responsive pleading, requested that the Arbitrator resolve the dispute over access to the water reservoir:

> Regarding the rights to the water reservoir located on Tract C-2, following the division, the owners of B and C-1 would have no right to access the reservoir system on Tract C-2 and no right to go onto Tract C-2 to inspect the pipes on that property, etc. As part of the division, Tract C-2 would not be granting any water utility easement to Tract B or Tract C-1. Tract B and Tract C-1 will make their own arrangements for water.

*Lorant*, 187 N.C. App. at 573, 654 S.E.2d at 51 (citations omitted) ("An arbitrator's ability to act is both created and limited by the authority conferred on him by the parties' private arbitration agreement. Only those claims submitted to the arbitrator

may be decided by him."); N.C. Gen. Stat. § 1-569.24(a)(2) (providing "the court shall modify or correct the award if . . . [t]he arbitrator has made an award on a claim not submitted to the arbitrator"). And with respect to the traffic count and utilities easement provisions, the Arbitrator imposed these remedies in response to the parties' joint request to partition the real property equitably:

> [Plaintiff] and [Defendant], in their respective pleadings, have requested the Arbitrator divide and partition part of the real property between themselves and to sell part of the real property. In light of the unique circumstances of the real property, the mutual desire of [Plaintiff] and [Defendant], and the authority to both sell and distribute the property in kind under sections 11.1(d) and 11.5 of [the Operating Agreement], the Arbitrator has elected to divide Devotion's real property . . . .

Defendant maintains the shared water reservoir maintenance provision is erroneous because requiring her to make capital contributions for the rehabilitation project violates Sections 8.2 and 11.3 of the Operating Agreement. Defendant, however, neither cites authority in support of how sharing maintenance costs constitutes a capital contribution nor defines such a legal term of art. Instead, Defendant provides general citations to the North Carolina Limited Liability Company Act's winding up, judicial dissolution, and marshaling of assets provisions. *See generally* N.C. Gen. Stat. §§ 57D-6-03, -07, and -08 (2023). As it is not this Court's task to make arguments for an appellant, we deem this argument to be abandoned. *See* N.C. R. App. P. 28(b)(6); *see also K2HN Constr. N.C., LLC v. Five D Contractors, Inc.*, 267 N.C. App. 207, 215, 832 S.E.2d 559, 565 (2019) (citation omitted) (noting "it

is not the role of this Court to create an appeal for an appellant or to supplement an appellant's brief with legal authority or arguments not contained therein").

Defendant also argues that the shared water reservoir maintenance and utilities provisions run afoul of *Swaim v. Simpson*, but that case dealt with whether a trial court "increasing the extent and scope of" an ingress and egress easement comported with the original grantor's intent. 120 N.C. App. 863, 863–64, 463 S.E.2d 785, 786–87 (1995). We fail to see the relevance of the *Swaim decision to this case*. Moreover, "[a]n arbitrator's award cannot be modified for error of law unless that error caused the arbitrator to act beyond the scope of his authority. . . . [And] an award may not be vacated merely because the arbitrator erred as to law or fact." *Lorant*, 187 N.C. App. at 578, 654 S.E.2d at 54.

As to the traffic count provision, Defendant maintains the remedy runs afoul of North Carolina law under *Foxx v. Davis, Tr. Of Walter Glen Davis, Jr. Revocable Living Trust*, 289 N.C. App. 473, 482, 890 S.E.2d 519, 526 (2023). Yet, that case dealt with a trial court's review of a motion for summary judgment that asked, inter alia,[7] whether paving a road "constituted an improvement" under the plain language of an easement created by deed. *Id.* at 481, 890 S.E.2d at 526. We fail to see the relevance of the *Foxx* decision to the matter *sub judice*. Furthermore, after providing a cursory reference to the *Foxx* decision, Defendant made no argument as to how the traffic

---

[7] We only address this portion of the *Foxx* case as it is the only passage cited in Defendant's appellate brief.

count mechanism violated *Foxx* or other established North Carolina law.  *See* N.C. R. App. P. 28(b)(6); *see also K2HN Constr.*, 267 N.C. App. at 215, 832 S.E.2d at 565.

As Plaintiff correctly observes, this Court's decision in *R.E.M. Constr. v. Cleveland Constr., Inc.*, 285 N.C. App. 167, 876 S.E.2d 851 (2022) is particularly instructive.  That decision arose "out of an arbitration proceeding" under the AAA between REM Construction and Cleveland Construction ("CCI").  *Id.* at 168, 876 S.E.2d at 853.  The arbitral panel entered an award, determining that "REM shall be entitled to monetary compensation from CCI in accordance with the terms of the Subcontracts."  *Id.*  Upon reviewing the Subcontracts, the arbitral panel concluded there was insufficient evidence to determine REM's actual direct cost.  *Id.* at 170, 876 S.E.2d at 853–54.  The arbitral panel thus fashioned an equitable remedy pursuant to the AAA's provisions.  *Id.*  REM later moved the trial court to confirm the award, and CCI moved to modify or partially vacate the award.  *Id.* at 171, 876 S.E.2d at 854. The trial court ultimately granted REM's motion to confirm the award and denied CCI's motion to modify or partially vacate.  *Id.*

On appeal, CCI argued, "the trial court should have vacated the panel's award of damages under N.C. Gen. Stat. § 1-569.23(a)(4), which provides that a trial court may vacate an arbitration award where '[a]n arbitrator exceeded the arbitrator's powers[.]'"  *Id.* at 172, 876 S.E.2d at 855 (alterations in original) (citation omitted). CCI maintained that the panel "exceeded its authority" by fashioning a remedy "outside of what was contemplated in the negotiated contract[.]"  *Id.* at 172–73, 876

S.E.2d at 855. Upon review, this Court upheld the trial court's confirmation of the arbitration award, reasoning that: (1) the Subcontracts did not "explicitly preclude[ ] the equitable remedy fashioned by the panel"; (2) "AAA Rule 48(a), which the Subcontracts specifically adopt[ed], authorize[d] the arbitration panel to 'grant *any remedy* or relief that the arbitrator deem[ed] just and equitable and within the scope of the agreement of the parties, *including*, but not limited to, *equitable relief*'"; (3) "the arbitration panel did not provide REM with any of the forms of compensation prohibited by the Subcontracts"; and (4) the "parties could have—but did not—write into the contract a limiting provision forbidding the arbitration panel from fashioning this specific remedy." *Id.* at 173–75, 876 S.E.2d at 856 (cleaned up). The Court thus concluded that "the arbitration panel did not act contrary to the express authority conferred on them by statute and by the language of the parties' private arbitration agreement." *Id.* at 175, 876 S.E.2d at 856.

As in *R.E.M. Constr.*, the Arbitrator in the instant case adhered to the scope of the arbitration clause, subsection 1-569.21(c), and AAA Rule 49(a) when fashioning remedies. *See* N.C. Gen. Stat. § 1-569.21(c) ("As to all other remedies . . . an arbitrator may order any remedies the arbitrator considers just and appropriate under the circumstances of the arbitration proceeding. The fact that a remedy could not or would not be granted by the court is not a ground for refusing to confirm an award under G.S. 1-569.22 or for vacating an award under G.S. 1-569.23."); *see also Am. Arb. Ass'n*, Commercial Arbitration Rules & Mediation Procedures, R. 49(a). Indeed, like

*R.E.M. Constr.*, the arbitration clause in question does not explicitly preclude the remedies Defendant complains of on appeal, and the arbitration agreement incorporates the AAA's rules. Had the parties intended to limit the remedies available via arbitration proceedings or the claims which could be resolved, it could have expressly written such a limiting provision into the arbitration clause. *R.E.M. Constr.*, 285 N.C. App. at 175, 876 S.E.2d at 856 (quoting *Lorant*, 187 N.C. App. at 577, 654 S.E.2d at 54) ("'[T]he parties could have—but did not—write into the contract a limiting provision' forbidding the arbitration panel from fashioning this specific remedy."); *accord Calvine Cotton Mills, Inc. v. Textile Workers Union*, 238 N.C. 719, 723, 79 S.E.2d 181, 184 (1953).

For all these reasons, we hold the Arbitrator did not exceed his authority when evaluating these claims and imposing these remedies. In turn, the trial court did not err by confirming the interim awards and denying Defendant's motion to modify or vacate on these bases.

## B. Mandatory Arbitration Clause

Last, Defendant asserts the Arbitrator exceeded his authority by requiring the parties to address all future disputes concerning the DECR through arbitration. Defendant maintains that the scope of the arbitration was "to wind up the affairs of an insolvent limited liability company and to terminate its very existence." We agree.

As noted above, an arbitrator's authority to act is derived from the underlying arbitration agreement as well as the claims the parties submitted. *Lorant*, 187 N.C.

App. at 573, 654 S.E.2d at 51 (citations omitted); *see also, e.g., Thomasville Chair Co.*, 233 N.C. at 49, 62 S.E.2d at 537.  Additionally, the duty to arbitrate is contractual in nature, meaning that parties may only be subjected to arbitral proceedings by way of mutual agreement.  *FCR Greensboro*, 119 N.C. App. at 577, 459 S.E.2d at 294 ("The duty to arbitrate is contractual, therefore, only disputes which the parties agreed to submit to arbitration may be resolved."); *Rodgers Builders*, 76 N.C. App. at 23, 331 S.E.2d at 731 ("[P]arties 'may include in a written contract a provision for the settlement by arbitration of *any* controversy thereafter arising between them relating to such contract or the failure or refusal to perform the whole or any part thereof.'").  Indeed, arbitration agreements merely provide the mechanism by which the agreeing parties obtain the "contractual right to arbitrate a dispute[.]"  *T.M.C.S., Inc. v. Marco Contractors, Inc.*, 244 N.C. App. 330, 340, 780 S.E.2d 588, 595 (2015).

Here, the Arbitrator exceeded his scope of authority by according relief on a matter not submitted to him.  *Lorant*, 187 N.C. App. at 573, 654 S.E.2d at 51 (citations omitted).  In initiating arbitration, Plaintiff never requested the Arbitrator to ensure that future disputes—following the closure of Devotion and distribution of its assets—would be subject to a certain type of legal proceeding, forum, or law.  Nor did Defendant in her responsive pleadings.  Instead, the parties requested that the Arbitrator distribute the property equitably minimizing owelty due between them, as indicated in the parties' stipulation:

> The parties agree to request that the arbitrator make a

> division of the remaining real property of Devotion Family, LLC in a manner that minimizes and attempts to avoid, to the extent possible, any owelty due from one party to the other, and further avoids to the extent possible any division where an owelty would be affixed to either remaining tract due to insufficient funds being available from the sale of Tract A, Tract B, and the personal property.

Nevertheless, the Arbitrator imposed a mandatory obligation to resolve all future disputes under the DECR via arbitration with the AAA:

> **Arbitration**. Any controversy or claim arising out of or relating to this Declaration, or the breach thereof, shall be settled by arbitration administered by the American Arbitration Association under its Commercial Arbitration Rules, and judgment on the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof.

As in *Thomasville Chair Co.*, the "power and authority of the arbitrators here was limited *by the terms of the agreement and the grievance submitted*, and the scope of the inquiry and decision must be determined in accord with that standard." 233 N.C. at 49, 62 S.E.2d at 537 (emphasis added).

Although "an arbitrator is allowed flexibility in formulating remedies," *Lorant*, 187 N.C. App. at 576, 654 S.E.2d at 53, this latitude is not unlimited. And as Defendant aptly noted in her objections to the second interim award: "With the completion of this Arbitration proceeding . . . the arbitration clause governing the parties' rights will have been fulfilled and no longer be operative." Accordingly, we hold the trial court erred by denying Defendant's motion to modify the interim awards to the extent that the imposition of the mandatory arbitration clause exceeded the

Arbitrator's authority. *See FCR Greensboro*, 119 N.C. App. at 577, 459 S.E.2d at 294 (citation omitted) ("[E]rrors resulting from arbitrators exceeding their authority shall be modified or corrected by the reviewing courts."); *see also* N.C. Gen. Stat. § 1-569.24(a)(2) (providing that "the court shall modify or correct the award if" the arbitrator "made an award on a claim not submitted to the arbitrator, and the award may be corrected without affecting the merits of the decision on the claims submitted").

## IV. Conclusion

After careful consideration, we conclude the Arbitrator exceeded his authority by requiring the parties to submit to arbitration for all future disputes concerning the DECR; we thus vacate this portion of the trial court's order. Otherwise, the Arbitrator's actions were well within his realm of authority. Therefore, we affirm the trial court's order confirming the second and third interim arbitration awards in part and remand in part for correction under N.C. Gen. Stat. § 1-569.24(a)(2).

AFFIRMED IN PART, VACATED IN PART, AND REMANDED.

Judges CARPENTER and MURRY concur.